*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER BUHL,

        Plaintiff-Appellant,

v

CITY OF OAK PARK,

        Defendant-Appellee.

FOR PUBLICATION
August 29, 2019
9:00 a.m.

No. 340359
Oakland Circuit Court
LC No. 2017-157097-NI

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

TUKEL, J.

This case involves the question of whether a legislative act, 2016 PA 419, which makes the "open and obvious" doctrine applicable to suits against municipalities, applies retroactively—that is, whether it applies "to events antedating its enactment." *Frank W Lynch & Co v Flex Tech, Inc*, 463 Mich 578, 585; 624 NW2d 180 (2001), citing *Landgraf v USI Film Products*, 511 US 244, 283; 114 S Ct 1483; 128 L Ed 2d 229 (1994). The retroactivity question turns on whether the act impaired a "vested right," and our Supreme Court has long noted that "[t]he question of determining what is a vested right has always been a source of much difficulty to all courts." *Lahti v Fosterling*, 357 Mich 578, 588-589; 99 NW2d 490 (1959). The trial court found that the statutory amendment applied retroactively and, applying the open and obvious doctrine, granted summary disposition to defendant. We hold that because no vested right of plaintiff was impaired by the Legislature's actions and because the Legislature's actions were remedial in nature, the resulting grant of summary disposition to defendant on the basis of the open and obvious doctrine was correct; we therefore affirm the trial court's judgment.

Plaintiff was injured on May 4, 2016, when she twisted her ankle on a sidewalk outside of a store called Trend Express in Oak Park, Michigan. The sidewalk was under defendant's exclusive jurisdiction. On the date of the injury, it was raining. Plaintiff's husband dropped her off in front of the building, and plaintiff walked toward the front door. Plaintiff noticed a crack in the sidewalk and attempted to step over it. However, plaintiff was looking at the store and failed to notice the uneven cement slabs on the far side of the crack from where she was walking. Plaintiff testified that she did not see the drop-off because she was not looking at the sidewalk

-1-

but admitted that she would have seen it if she had been watching where she was walking instead of looking at the store.

Plaintiff filed suit under the defective sidewalk exception to governmental immunity, MCL 691.1402a. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the defect was open and obvious.[1] Plaintiff argued that it did not matter whether the defect was open and obvious because MCL 691.1402a(5), which permitted defendant to assert the open and obvious defense, was not enacted until *after* she was injured.[2] Plaintiff also argued that irrespective of the applicability of this statutory amendment, the condition was not open and obvious because the drop-off was not clearly visible from the direction from which plaintiff approached the store. The trial court held that the statutory amendment was retroactive because it affected only the availability of a possible defense, not plaintiff's ability to bring a claim. Further, the trial court held that the condition was open and obvious because plaintiff's photographs clearly showed that the corner of the concrete slab where plaintiff claimed to have tripped was raised.

## I. RETROACTIVITY OF AMENDMENT TO MCL 691.1402a

On appeal, plaintiff first argues that the trial court erred when it determined that the amendment to MCL 691.1402a had retroactive effect. We disagree. This Court reviews de novo whether a statute applies retroactively. *Johnson v Pastoriza*, 491 Mich 417, 428-429; 818 NW2d 279 (2012).

## A. STATUTORY BACKGROUND

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., provides immunity from tort liability to governmental agencies when they are engaged in the exercise or discharge of a governmental function. MCL 691.1407(1); *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). The GTLA waives immunity and allows suit against a governmental agency only if the suit falls within one of the statutory exceptions. *Moraccini*, 296

---

[1] Defendant also moved for summary disposition under MCR 2.116(C)(8) based on plaintiff's complaint not identifying the date of the accident. The trial court noted that even if it had agreed with defendant, it would have allowed plaintiff to amend her complaint to include the date. Thus, because the trial court found that summary disposition was warranted under MCR 2.116(C)(10), it declined to rule on the basis of MCR 2.116(C)(8), and that aspect of the motion is not pertinent for our purposes on appeal.

[2] The relevant timeline of events is thus:

- May 4, 2016: plaintiff's injury;
- January 3, 2017: enactment of amended statute;
- January 4, 2017: effective date of amended statute;
- January 31, 2017: plaintiff's complaint filed.

Mich App at 392. MCL 691.1402a allows a plaintiff to sue a municipal corporation under some circumstances when the municipal corporation fails to maintain a sidewalk, and provides:

(1) A municipal corporation in which a sidewalk is installed adjacent to a municipal, county, or state highway shall maintain the sidewalk in reasonable repair.

(2) A municipal corporation is not liable for breach of a duty to maintain a sidewalk unless the plaintiff proves that at least 30 days before the occurrence of the relevant injury, death, or damage, the municipal corporation knew or, in the exercise of reasonable diligence, should have known of the existence of the defect in the sidewalk.

(3) In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) is presumed to have maintained the sidewalk in reasonable repair. This presumption may only be rebutted by evidence of facts showing that a proximate cause of the injury was 1 or both of the following:

(a) A vertical discontinuity defect of 2 inches or more in the sidewalk.

(b) A dangerous condition in the sidewalk itself of a particular character other than solely a vertical discontinuity.

(4) Whether a presumption under subsection (3) has been rebutted is a question of law for the court.

(5) In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) may assert, in addition to any other defense available to it, any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious.

(6) A municipal corporation's liability under subsection (1) is limited by section 81131 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.81131.

This current version of the statute was enacted on January 3, 2017, with the passage of 2016 PA 419, becoming effective on January 4, 2017. The only changes brought about by 2016 PA 419 were to add subsection (5) above, and, although not relevant for purposes of this case, to renumber the previous subsection (5) to subsection (6).

B. RETROACTIVITY DEFINED

The United States Supreme Court has noted that "courts have labored to reconcile two seemingly contradictory statements found in our decisions concerning the effect of intervening changes in the law. Each statement is framed as a generally applicable rule for interpreting statutes that do not specify their temporal reach." *Landgraf*, 511 US at 263-264 (citations omitted).

The first is the rule that "a court is to apply the law in effect at the time it renders its decision[.]" The second is the axiom that "[r]etroactivity is not favored in the law," and its interpretive corollary that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." [*Id*. at 264 (citations omitted).]

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law," *id*. at 269 (citations omitted), nor is it " 'made retroactive merely because it draws upon antecedent facts for its operation,' " *id*. at 269 n 24 (citations omitted). "[C]ourts should apply the law in effect at the time that they decide a case *unless* that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court." *BellSouth Telecom, Inc v Southeast Tel, Inc*, 462 F3d 650, 657 (CA 6, 2006) (citation omitted).

"[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 US at 269-270. "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id*. at 270. "Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have 'sound instincts,' and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance." *Id*. (citation and brackets omitted).

There are four rules that a court must consider when determining whether a new statute applies retrospectively. *In re Certified Questions from US Court of Appeals for the Sixth Circuit*, 416 Mich 558, 570; 331 NW2d 456 (1982):

First, is there specific language in the new act which states that it should be given retrospective or prospective application. Second, a statute is not regarded as operating retrospectively solely because it relates to an antecedent event. Third, a retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute. [*Id*. at 570-571 (quotation marks, citations, and brackets omitted).]

Under rule one, the intent of the Legislature governs the question of whether a statute applies retroactively. *Johnson*, 491 Mich at 429. Indeed, our Supreme Court has stated that " '[t]he primary and overriding rule is that legislative intent governs. All other rules of construction and operation are subservient to this principle.' " *Lynch*, 463 Mich at 583 (citation omitted). Absent such clear indication that the Legislature intended retroactive application, it is presumed that a statute applies only prospectively. *Brewer v A D Transp Express, Inc*, 486 Mich 50, 55-56; 782 NW2d 475 (2010); *Franks v White Pine Copper Div*, 422 Mich 636, 670; 375 NW2d 715 (1985).

"Second rule cases relate to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute," *id.* at 571, which is not applicable here. "The third rule and the cases thereunder define those retrospective situations that *are not* legally acceptable, whereas the fourth rule defines those that *are* acceptable." *Id*. at 572 (emphasis added). Because the retroactivity analysis is based in part on reasonable reliance, the proper analysis is whether a new statute "would impair rights a party possessed when he acted[.]" *Landgraf*, 511 US at 280.

## C.  APPLYING THE RETROACTIVITY TEST

### 1.  STATUTORY TEXT

The first factor to consider is whether the text of the statute at issue provides that it is to be given retroactive or prospective effect. *In re Certified Questions*, 416 Mich at 570; see also *Johnson*, 491 Mich at 429. Our Supreme Court "has recognized that 'providing a specific, future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only.' " *Johnson*, 491 Mich at 432 (citation omitted). In the present case, the statute did not include a future effective date, but rather was given immediate effect. "Use of the phrase 'immediate effect' does not at all suggest that a public act applies retroactively." *Id*. at 430. Rather, "immediate effect" means only "that the Legislature by a ⅔ vote expressed an intention that the amendatory act take effect on the date it was filed." *Id*. at 431 n 30. Thus, the lack of any language here regarding retroactivity weighs in favor of prospective application only.

### 2.  TAKING AWAY OR IMPAIRING VESTED RIGHTS

"A cause of action becomes a vested right when it accrues and all the facts become operative and known." *Doe v Dep't of Corrections*, 249 Mich App 49, 61-62; 641 NW2d 269 (2001), citing *In re Certified Questions*, 416 Mich at 572-573. If the retroactive application of a law would take away or impair vested rights, then its retroactive application is prohibited by rule three; rule four provides the mirror image, providing that "a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute." *In re Certified Questions*, 416 Mich at 572. As far as a plaintiff asserting a claim is concerned, retroactive application is prohibited if an "accrued cause of action would be totally barred or taken away by a new act."

Here, the statute at issue did not totally bar or take away a cause of action; rather it made available to municipal corporations common-law defenses, including the open and obvious doctrine. Importantly, even after the enactment of the amended statute, plaintiff could still assert the identical cause of action against defendant, and the full range of damages previously available to a prevailing plaintiff is unchanged by the statutory amendment. Cf. *Johnson*, 491 Mich at 433-434 (holding that an amendment which created a new right of prevailing plaintiffs to receive damages for loss of consortium and other damages not previously available creates a new legal burden on defendants, which may not be applied retrospectively). By the plain language of *In re Certified Questions*, only the abolition of an existing or accrued cause of action takes away or impairs a plaintiff's vested rights. Moreover, *In re Certified Questions*, 416 Mich at 577, specifically noted that only a "legal bar" would implicate the "totally barred or taken

away by the new act" language. The question in that case was whether the adoption of a comparative negligence statute would apply to a cause of action for products liability, and if so, whether the comparative negligence statute would be applied retroactively. See *id*. at 561. In analyzing the issue, our Supreme Court stated:

> While the total damages which plaintiff could have received were significantly reduced by § 2949, *plaintiff's cause of action was not legally barred or taken away.*
>
> *Section 2949 does not bar any claim, legal or equitable*, but it states that "damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." Section 2949 *is not a legal bar*, but is a principle established by the Legislature which mitigates damages in products liability actions.
>
> In short, we hold that the applicability of the products liability statute in the instant case did not offend Michigan's general rule against the retrospective application of a statute which "take[s] away vested rights." [*Id*. at 577-578 (citations omitted; emphasis added).]

The Supreme Court's analysis was based on the plaintiff's cause of action not being "*legally* barred or taken away"; because the act at issue in that case was not "a legal bar," it did not deprive the plaintiff of a vested right.

Thus, under *In re Certified Questions*, a cause of action can be "totally barred or taken away by the new act" only if the act extinguishes it as a matter of law. For example, causes of action for alienation of affection which previously existed were "totally barred by a new act" when the Legislature repealed them because the legislative action rendered such causes of action extinct. See former MCL 551.301-551.311, repealed by 1980 PA 180. The cause of action against a municipality for a defective sidewalk was not rendered extinct by the enactment of 2016 PA 419—the cause of action still exists.

The dissent seemingly understands this point when it cites the *In re Certified Questions* test that rule three is implicated when an "accrued cause of action would be totally barred or taken away by a new act," but then goes on to argue for the misapplication of the test. The dissent argues that if the open and obvious doctrine is applied, plaintiff will lose her case; this, the dissent states, constitutes plaintiff's cause of action being " 'totally barred or taken away *by [the] new act*.' " (Emphasis added). The dissent asserts, contrary to *In re Certified Questions*, that "[w]hether the statutory amendment at issue abolishes Buhl's cause of action outright or its application results in dismissal of her lawsuit, albeit after a judicial finding on the question of whether the danger was open and obvious, makes no difference. Either way, Buhl's 'accrued cause of action [is] totally barred or taken away by a new act.' "

However, to the extent that that plaintiff's case is subject to dismissal under the open and obvious doctrine, it is *not* "totally barred or taken away" "by a new act," but because in this particular case, the hazard was readily apparent and thus the *facts* preclude recovery. In other words, plaintiff's cause of action is barred not "by a new act," but rather by a new act *plus* the

particular facts relating to her injury. A dismissal based on factual infirmities is not a "legal bar" but a "factual bar." As such, rule three is inapplicable because a cause of action being barred by application of a new act plus particular facts simply cannot be squared with the language used by our Supreme Court, or by its discussion of rule three, in *In re Certified Questions*.

Even setting aside the dissent's misreading of the "by a new act" language from *In re Certified Questions*, its position here is curious—it would decide a *legal* issue (the retroactive availability of the open and obvious doctrine to municipalities) on the basis of a purely *factual* determination (whether there is merit to a defense claim that a particular hazard was open and obvious). However, because it involves a legal doctrine, the question of whether or not the statute is to be applied retroactively must apply equally in all cases; the statute either is retroactive or it is not. However, as a question of fact, the open and obvious doctrine surely will not apply in every case in which it is invoked. Some defendants will argue that a particular plaintiff is barred from recovery because a hazard was open and obvious, but a jury nevertheless will find factually that the hazard was not so readily apparent. Applying the dissent's position, then, courts would have to decide on a case-by-case basis whether a particular plaintiff's case would be defeated by application of open and obvious doctrine; if the answer is that it would be, that would mean, according to the dissent, that the cause of action would be "totally barred or taken away by the new act" and thus the act could not be applied retroactively to such a case. This approach never would settle the question presented here but instead would require the legal determination of the retroactivity question to be made in each lawsuit, on a case-by-case basis. The dissent cites no authority for the proposition that the retroactivity decision must be decided anew in each case, and that the decision will turn on the factual vagaries of a particular case.

The distinction between a cause of action failing for legal reasons as opposed to factual reasons is so common that the Michigan Court Rules distinguish between them. See MCR 2.116(C)(8) (governing motions for summary disposition based on a legal failure to state a claim upon which relief can be granted) and MCR 2.116(C)(10) (governing motions for summary disposition based on failure of proof). The *In re Certified Questions* analysis under rule three applies the same distinction. Applying that analysis here, the cause of action for injuries sustained on a municipal sidewalk remains extant; no one would say, in light of the statutory amendment at issue, that plaintiff's complaint fails to state a claim upon which relief can be granted in that the cause of action no longer exists. Consequently, for purposes of applying the test of *In re Certified Questions*, plaintiff's cause of action has not been "totally barred or taken away by a new act." And of course, as noted above, reading "totally barred or taken away by a new act" in this manner means the retroactivity question will be decided by a single legal standard, and will not vary from case to case based on the facts.

Moreover, as noted, a relevant consideration for determining whether a party had a vested right is whether the new statute "would impair rights a party possessed when he acted[.]" *Landgraf*, 511 US at 280. As one federal court of appeals has noted, a strong consideration in determining whether a plaintiff's rights have been impaired is whether the plaintiff relied on the state of the law prior to the statutory amendment. *Southwest Ctr for Biological Diversity v US Dep't of Agriculture*, 314 F3d 1060, 1062 (CA 9, 2002). However, as the *Southwest Ctr* court noted, "Surely the [plaintiff's] expectation of success in its litigation is not the kind of settled expectation protected by *Landgraf*'s presumption against retroactivity. As the [defendant] points out, if that expectation were sufficient then no statute would ever apply to a pending case unless

Congress expressly made it so applicable. The *Landgraf* inquiry would become pointless." *Id*. at 1062 n 1.[3] The dissent here commits exactly that error, by stating that "[t]he legal question before us is whether the Legislature clearly stated its intention to apply 2016 PA 419 retroactively." That would be true for a rule one analysis; it is incorrect for the rule three and rule four analyses applicable here because it would override and therefore make pointless any analysis under those rules.[4]

In the present case, the only claimed reliance on plaintiff's part is to the non-applicability of the open and obvious doctrine. In the words of the dissent, 2016 PA 419 is "a game changer" because it so radically changed the " 'expectation of success' in [plaintiff's] ligitation." As *Southwest Ctr* held, however, that is not the kind of settled expectation protected by *Landsgraf*. To the contrary, the United States Supreme Court has noted that "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf*, 511 US at 271. This principle explains cases such as *Brewer*, which denied retroactive application. In *Brewer*, an amendment to the workers' compensation act created "an entirely new jurisdictional standard, granting jurisdiction over out-of-state injuries of Michigan employees whose contracts of hire were not made in Michigan." *Brewer*, 486 Mich at 57.[5] Retroactive application thus would have upset expectations regarding

---

[3] Our courts have made the same point. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 370-371; 803 NW2d 698 (2010) ("[A] vested right is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another.") (quotation marks and citations omitted).

[4] The dissent dismisses our reliance on *Southwest Ctr* as based on a distinction between a right of action and a right of recovery and states that its position is based only on a right of action. However, no such distinction exists. *Southwest Ctr* involved a Freedom of Information Act exemption, which was enacted after the plaintiff had filed suit; if the exemption was applicable, it was undisputed that it would bar the suit completely. The court held that "The [plaintiff] contends that application of § 207 'impairs [a] right the [plaintiff] possessed when it acted,' because the [plaintiff] had a right to the information when it filed its suit (or when it made its earlier request) and it loses that right by application of the new exemption. But the 'action' of the [plaintiff] was merely to request or sue for information; it was not to take a position in reliance upon existing law that would prejudice the [plaintiff] when the law was changed." *Southwest Ctr*, 314 F3d at 1062 (cleaned up). *Southwest Ctr* thus flatly rejected the argument accepted by the dissent here that plaintiff "has a vested right to continue her cause of action under the substantive law in existence before the statutory amendment." Because plaintiff had no vested right in the pre-existing substantive law, this case falls within rule four rather than rule three.

[5] Part I.C.3 of this opinion discusses how the legislation at issue in *Brewer* created an entirely new jurisdictional standard, which is relevant to discussion of why the present case falls within

employers' potential liability based on existing law by imposing "a new legal burden on out-of-state employers not previously subject to the jurisdiction of the Workers' Compensation Agency," *id.*, and "also potentially enlarged existing rights for Michigan residents injured in other states under contracts of hire not made in Michigan," *id.* at 58.

Here, by contrast, the allegations were of negligence leading to a slip and fall. By definition, no one expects to slip and fall; thus, the "familiar considerations of fair notice, reasonable reliance, and settled expectations," *Landgraf*, 511 US at 270, have significantly less force. In other words, because the statute at issue relates to acts which necessarily are unplanned, it is not unreasonable, at least in the abstract, to expect that 2016 PA 419 would apply to antecedent events or transactions which would not have been changed even if the participants had been aware that a different legal regime might attach.

As our Supreme Court has stated in a different context, "[T]o have reliance[,] the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event." *Robinson v Detroit*, 462 Mich 439, 467; 613 NW2d 307 (2000). However, as noted, a slip and fall is not something which is planned, and thus there could not have been any reliance interest in avoiding a particular application of the law to such an occurrence. " 'An act of the Legislature, though it have retrospective effect, is not necessarily invalid, and does not, for that reason, come into conflict with any constitutional provision, unless vested, not potential, rights are disturbed.' " *Lahti*, 357 Mich. at 594 (citation omitted). Rights regarding a slip and fall which has not yet occurred are of course potential only. On the morning of May 16, 2016, the date of plaintiff's injury, it is inconceivable that she would have acted differently if she had known that eight months later the Legislature would make the open and obvious doctrine applicable to any slip and fall which might occur that day; in other words, in no way could she have reasonably relied on the existing state of the law, i.e., the inapplicability of the open and obvious doctrine, in going about her business and conducting her affairs.

The dissent cites *Vartelas v Holder*, 566 US 257, 272; 132 S Ct 1479; 182 L Ed 2d 473 (2012), for the proposition that plaintiff "need not demonstrate reliance on the prior law in structuring her conduct. *Landgraf* contains no such requirement." The dissent misreads both *Landgraf* and our majority opinion.

> While the presumption against retroactive application of statutes does not require a showing of detrimental reliance, *reasonable reliance has been noted among the 'familiar considerations' animating the presumption*, see *Landgraf*, 511 US at 270 (presumption reflects "familiar considerations of fair notice, reasonable reliance, and settled expectations"). *Although not a necessary predicate for invoking the antiretroactivity principle, the likelihood of reliance on prior law strengthens the case for reading a newly enacted law prospectively*." [*Vartelas*, 566 US at 273-274 (some citations omitted; emphasis added).]

---

rule four. For present purposes, it is sufficient to note that the legislation in *Brewer* upset reliance interests.

For the reasons stated, plaintiff could not have reasonably relied on prior law, thereby failing to "strengthen[] the case for reading [2016 PA 219] prospectively." *Id*.

### 3. A REMEDIAL OR PROCEDURAL ACT WHICH DOES NOT DESTROY A VESTED RIGHT; LEGISLATIVE OVERRULING OF PRIOR JUDICIAL DECISIONS

#### a. REINSTATING THE PREVIOUS STATE OF THE LAW

Finally, under rule four, a remedial or procedural act which does not destroy a vested right will be given retroactive effect even in instances in which the injury or claim is antecedent to the enactment of the statute. *In re Certified Questions*, 416 Mich at 571. "A statute is remedial or procedural in character if it is designed to correct an existing oversight in the law or redress an existing grievance." *Davis v State Employees' Ret Bd*, 272 Mich App 151, 158-159; 725 NW2d 56 (2006). On the other hand, if the legislation enacts a substantive change to the law, it is to be given prospective application. *Johnson*, 491 Mich at 430. Under this analysis, "An amendment may apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regarding its meaning." *Mortgage Electronic Registration Sys, Inc v Pickrell*, 271 Mich App 119, 126; 721 NW2d 276 (2006). Thus, our Supreme Court recognizes that if the Legislature adopts an amendment directed at a particular judicial decision, and through that amendment not only overrules the judicial decision but also reinstates the state of the law as it existed prior to the judicial decision, then the amendment is considered remedial and will be applied retroactively. This is so because legislatively reversing an erroneous judicial decision and reinstating the status quo ante corrects "an existing oversight in the law" and "redress[es] an existing grievance," *Davis*, 272 Mich App at 158-159, and also "clarif[ies] an existing statute" and "resolve[s] a controversy regarding its meaning," *Mortgage Electronic Registration Sys*, 271 Mich App at 126.

*Brewer* provides an example of this principle. An earlier decision, *Karaczewski v Farbman Stein & Co*, 478 Mich 28; 732 NW2d 56 (2007), had held that the previous statute provided for application of workers' compensation coverage regarding out-of-state injuries only if the contract of hire had been made in Michigan. As previously noted, the amendment "created an entirely new jurisdictional standard, granting jurisdiction over out-of-state injuries of Michigan employees whose contracts of hire were not made in Michigan," *Brewer*, 486 Mich at 57, and thus was plainly a substantive change in the law which could not be applied retroactively. *Id*. at 56-57. Continuing its analysis, the *Brewer* Court noted:

> Further undermining any notion of a legislative intent to apply the amendment of MCL 418.845 retroactively is the fact that, *although the Legislature adopted the amendment after our decision in* Karaczewski*, it did not reinstate the pre-*Karaczewski *state of the law.* On the contrary, the amendment enacted by 2008 PA 499 created an entirely new jurisdictional standard, granting jurisdiction over out-of-state injuries of Michigan employees whose contracts of hire were not made in Michigan. *That is, this amendment did not restore the status quo before* Karaczewski, which required a Michigan contract of hire for jurisdiction, *but instead created a new rule* under which either a Michigan contract of hire or Michigan residency would suffice. [*Id*. at 57 (emphasis added, emphasis in original removed).]

-10-

The obvious teaching of this aspect of *Brewer* is that if the legislation which overruled *Karaczewski* also had restored the pre-*Karaczewski* status quo, then the new enactment would have applied retroactively.

The rationale of *Brewer* regarding the reinstating of a prior doctrine is clear. By overturning a particular judicial decision, the Legislature states that the decision was erroneous. However, that fact alone is insufficient for retroactive application because, as *Brewer* shows, even when a previous decision is repudiated, if the legislation rejecting it imposes new burdens not previously extant or enlarges existing rights, it unsettles legitimate expectations. See also *Bd of Trustees of City of Pontiac Police v City of Pontiac*, 502 Mich 868, 872 (2018) (ZAHRA, J., dissenting) (quotation marks and citations omitted) ("Retroactive application of legislation presents problems of unfairness . . . because it can deprive citizens of legitimate expectations and upset settled transactions."). But so long as no vested right is affected, as is the case here, retroactive application is warranted. This conclusion is reinforced by the fact that by limiting that aspect of *Brewer* to legislative changes which restore the prior state of the law, the rule vitiates the unfairness which could result from retroactive application, as " 'no right is destroyed when the law restores a remedy which had been lost.' " *Lahti*, 357 Mich at 589 (citation omitted). Thus, the Legislature's reinstatement of a prior doctrine, which "had been lost through" judicial decision and which, according to the Legislature, should have applied all along, works no unfairness because it is "designed to correct an existing oversight in the law or redress an existing grievance." *Davis*, 272 Mich App at 158-159. It is also a permissible mechanism by which "the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regarding its meaning." *Mortgage Electronic Registration Sys*, 271 Mich App at 126.

The *Brewer* restoration rule applies to 2016 PA 419. In this case, the statutory amendment overturned legal doctrine which had made the open and obvious doctrine inapplicable to claims against a municipality involving a statutory duty to maintain a sidewalk, and as explained in detail below, the act also restored the status quo ante of the repudiated legal doctrine.

### b. THE CHANGES BROUGHT ABOUT BY 2016 PA 419, INCLUDING REINSTATEMENT OF THE 1964 ACT

At common law, municipalities such as defendant were not subject to liability at all. Rather, they were cloaked with "governmental immunity." See *Pohutski v City of Allen Park*, 465 Mich 675, 682; 641 NW2d 219 (2002). In 1964, the Legislature enacted the GTLA. See 1964 PA 170. That act generally preserved governmental immunity involving sidewalks, providing that "[t]he duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks or any other installation outside of the improved portion of the highway designed for vehicular travel." *Id.*, § 2.

In 1999 PA 205, the Legislature enacted the first version of § 2a, the provision at issue here. The 1999 act generally maintained immunity for municipal corporations for "injuries arising from[] a portion of a county highway outside of the improved portion of the highway

designed for vehicular travel, including a sidewalk." 1999 PA 205, § 2a(1). However, the 1999 act also provided that there would be liability if, "[a]t least 30 days before the occurrence of the relevant injury, death, or damage, the municipal corporation knew or, in the exercise of reasonable diligence, should have known of the existence of a defect in a sidewalk[.]" *Id.*, § 2a(1)(a). And the act provided that "[a] discontinuity defect of less than 2 inches creates a rebuttable inference that the municipal corporation maintained the sidewalk . . . in reasonable repair." *Id.*, § 2a(2).

Importantly, § 12 of the GTLA provides that "[c]laims under this act are subject to all of the defenses available to claims sounding in tort brought against private persons." MCL 691.1412. In fact, that provision has never been modified or repealed and has remained in force as enacted since the GTLA's inception in 1964. We interpret statutory language regarding the Legislature's intent as of the time of enactment. *Oole v Oosting*, 82 Mich App 291, 295; 266 NW2d 795 (1978). By using the word "available," the Legislature preserved defenses which, as of the date of passage of § 12, were legally recognized. As of 1964, when § 12 was enacted, it was well established that "claims sounding in tort brought against private persons" were subject to a common-law defense that the risk of a dangerous condition was open and obvious, and thus that a person who was injured under such circumstances was barred from recovering, see, e.g., *Kaukola v Oliver Iron Min Co*, 159 Mich 689; 124 NW 591 (1910).

In *Jones v Enertel, Inc*, 467 Mich 266; 650 NW2d 334 (2002), in light of the statutory enactments, our Supreme Court addressed the availability of the "open and obvious" doctrine to a municipality which allegedly failed to maintain a sidewalk in reasonable repair. "The basic duty owed to an invitee by a premises possessor is 'to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land.'" *Id*. at 269 (citation omitted). The Court noted that "this duty does not generally require a premises possessor to remove open and obvious conditions because, absent special aspects, such conditions are not unreasonably dangerous precisely because they are open and obvious." *Id.* The Court concluded:

> However, such reasoning cannot be applied to the statutory duty of a municipality to maintain sidewalks on public highways because the statute requires the sidewalks to be kept in "reasonable repair." The statutory language does not allow a municipality to forego such repairs because the defective condition of a sidewalk is open and obvious. Accordingly, we conclude that the open and obvious doctrine of common-law premises liability cannot bar a claim against a municipality under MCL 691.1402(1). [*Id.*[6]]

The Court also held that municipal corporations could not rely on the statutory language of § 12 of 1964 PA 170, providing that "[c]laims under this act are subject to all of the defenses available to claims sounding in tort brought against private persons," to invoke the open and

---

[6] This Court had reached the same result in other cases. See, e.g., *Walker v City of Flint*, 213 Mich App 18, 23; 539 NW2d 535 (1995). For ease of reference, this opinion uses the term "the *Jones* doctrine" to refer to all such cases, whether decided by our Supreme Court or this Court.

obvious doctrine. The Supreme Court explained that because the open and obvious defense has no application to the statutory duty of a municipality for the reasons already explained in its opinion and discussed above, that defense simply did not apply, regardless of the general rule in § 12. *Jones*, 467 Mich at 270-271.

Thus, as a matter of law under the *Jones* doctrine, the defense of open and obvious was not available to a municipality sued for injuries caused by a sidewalk which it had a statutory duty to maintain. And there things stood until the Legislature passed 2016 PA 419.

As noted, the language of 2016 PA 419, § 2a(5) provides, "In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) may assert, in addition to any other defense available to it, any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious." Given the development of the law culminating in the *Jones* doctrine, it is readily apparent that the Legislature intended to abrogate that doctrine. "[A] general rule of statutory construction is that the Legislature is presumed to know of and legislate in harmony with existing laws." *O'Connell v Dir of Elections*, 316 Mich App 91, 99; 891 NW2d 240 (2016) (quotation marks and citation omitted). The 1964 Act provided that "all defenses available to private parties" were available under it; those defenses included the open and obvious doctrine; nevertheless, and as a matter of law under the *Jones* doctrine a hazard being open and obvious was inapplicable as a defense to claims involving a municipal corporation's statutory duty to maintain a sidewalk in reasonable repair; and the Legislature then passed 2016 PA 419, providing that a municipal corporation "may assert *any* defense available under the common law," and even though "any defense" necessarily includes the open and obvious doctrine, and to further ensure that there were no ambiguities, the Legislature added the words "including, but not limited to, a defense that the condition was open and obvious." 2016 PA 419, § 2a(5) (emphasis added).

c. THE *BREWER* RETROACTIVITY RULE APPLIED TO 2016 PA 419

The sequence of events recited above shows that the Legislature abrogated the *Jones* doctrine, the first part of the *Brewer* retroactivity test. It would be difficult to think of words which more precisely reject the rationale of the *Jones* doctrine than do the words of § 5 of 2016 PA 419. The 1964 Act had afforded municipalities sued under the act "*all* of the defenses available to claims sounding in tort brought against private persons," 1964 PA 170, § 12 (emphasis added); in the aftermath of *Jones*, the 2016 act afforded those same municipalities "*any* defense available under the common law with respect to a premises liability claim," (emphasis added). There is no material distinction in meaning between "all" and "any"; our Supreme Court has noted that the word " '[a]ny' is defined as 'every; all.' " *City of South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich 518, 527; 734 NW2d 533 (2007). Moreover, making "any" defenses applicable to claims against a municipality, expressly including the open and obvious doctrine, was the only substantive change the amendment wrought. Indeed, if 2016 PA 419 was *not* intended to overrule *Jones*, the Legislature had no discernable purpose in enacting it. "When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory," *Karpinsky v St John Hosp-Macomb Ctr Corp*, 238 Mich App 539, 543; 606 NW2d 45 (1999). Based on the language employed by the Legislature as well as the rule of statutory

-13-

construction against surplusage, we find that the 2016 Act directly repudiated and overruled the *Jones* doctrine by making clear that the open and obvious doctrine was to be available to municipal corporations which had a statutory duty to maintain a sidewalk.[7]

For retroactivity to apply, the second prong of the exception to the *Brewer* test requires not only that a statutory amendment overrule a prior judicial decision, but also mandates that in overruling the decision the Legislature return the state of the law to the pre-decision status quo. For the same reasons, 2016 PA 219 did so, by reinstating for municipal corporations all common-law defenses, as had been provided for in the initial, 1964 Act.

Thus, by enacting 2016 PA 219, the Legislature has stated that the *Jones* doctrine was not what it had intended for the law to be; rather, the amendment shows that it was the Legislature's intent for defenses available to private parties, as provided for by the 1964 Act, to have applied all along. In essence, the amendment states, "The *Jones* doctrine is overruled," thereby satisfying the first prong of *Brewer*. In addition, the remainder of the statute essentially states, "And we never intended for the *Jones* doctrine to be the law, so we are reinstating the law as we set forth in the 1964 Act," thereby satisfying the second prong of *Brewer*. By so acting, the legislation also clarified the Legislature's intent regarding the previous law and settled the

---

[7] The dissent cites *Adrian Sch Dist v Mich Pub Sch Employees Retirement Sys*, 458 Mich 326, 337; 582 NW2d 767 (1998) (quotation marks and citations; emphasis added), for the proposition that the 2016 act cannot be construed to clarify the Legislature's intent because only "when a legislative amendment is enacted *soon* after a controversy arises regarding the meaning of an act" is it "logical to regard the amendment as a legislative interpretation of the original act . . . ." The dissent states that the 14 years which passed between the Supreme Court's decision in *Jones* and the 2016 enactment is too lengthy a period of time to inform our analysis. However, *Adrian Sch Dist* involves a different point than did *Brewer*. In *Adrian Sch Dist*, the Legislature amended a statute "as a ratification of the position of the retirement board," *id*. at 337; see also *id*. at 326 n 11 ("We do not give the 1996 amendment retroactive effect. Rather, we give effect to the retirement board's 1993 declaratory ruling."), which did not necessarily reflect the position originally set forth by the Legislature. In *Brewer* and here, by contrast, the Legislature acted to conclusively reaffirm the position *it* had previously taken. The dissent cites no authority, and we have found none, to the effect that there is a temporal limit on the Legislature's authority to overrule a precedent with which it disagrees and to thereby reinstate its previous exposition of the law; and 14 years is not a particularly lengthy period preceding a legislature's decision to statutorily reverse a court decision. See Eskridge, *Overriding Supreme Court Statutory Interpretation Decisions*, 101 Yale LJ 331, 424 (Appendix I), citing the following: PL 100-703, § 201; 102 Stat 4674, 4676 (1988), overruling *United States v Morton Salt Co*, 338 US 632; 70 S Ct 357; 94 L Ed 401 (1950), after 38 years; PL 99-654, § 2; 100 Stat 3660, 3660-3663 (1986), overruling *Williams v United States*, 327 US 711; 66 S Ct 778; 90 L Ed 962 (1946), after 40 years; PL 99-628, § 5(b)(1); 100 Stat 3510-3511 (1986), overruling *Caminetti v United States*, 242 US 470; 37 S Ct 192; 61 L Ed 442 (1917), and *Cleveland v United States*, 329 US 14; 67 S Ct 13; 91 L Ed 12 (1946), after 59 and 40 years respectively.

controversy created by the *Jones* doctrine regarding its meaning, which is to be applied retroactively.

It is this second aspect of the amendment, in which the Legislature clarified that it never had intended for the *Jones* doctrine to be the law, which the dissent rejects, stating that "applying 2016 PA 419 retroactively eliminates the city's duty," and thereby impairs plaintiff's vested rights. The dissent states that *Brewer* stands for the rule that "[e]ven if the Legislature acts to invalidate a prior decision of this Court, the amendment is limited to prospective application if it enacts a substantive *change* in the law." *Brewer*, 486 Mich at 56, citing *Hurd v Ford Motor Co*, 423 Mich 531, 533; 377 NW2d 300 (1985) (emphasis added). That is of course true but not relevant—the point of the reinstatement doctrine is that if the Legislature overrules a judicial decision by restoring the status quo ante, it demonstrates what it intended the law to be all along; under such circumstances, the new legislation does not enact a substantive change in the law.

This point demonstrates the fundamental disagreement between the majority and the dissent. The majority's view is that the Legislature, through the 1964 act and 2016 PA 219, clearly manifested what its intention was for the law to have been all along, i.e., the availability of the open and obvious doctrine to municipalities, and thus properly understood, the 2016 act did not effect a change in the law. The dissent's view is that the *Jones* doctrine was the law prior to the enactment of 2016 PA 219, notwithstanding that the Legislature has now clearly manifested its view that the *Jones* doctrine was erroneous all along. Thus, the dissent views retroactive application of 2016 PA 219 as improperly denying plaintiff a right because the act constituted a substantive change in the law; the majority's view is that allowing plaintiff to reap the benefits of a repudiated rule, which the Legislature has conclusively stated was incorrect and never should have applied, does not constitute "a substantive change in the law," would constitute an unwarranted windfall for plaintiff, and therefore cannot constitute "a vested right."[8]

Thus, while it might be true in some sense that the amendment changed the city's duty, as the dissent argues, that change only came about because of the Legislature's determination that courts had been misapplying that duty all along. Therefore, this change did not affect a vested right because " 'no right is destroyed when the law restores a remedy which had been lost.' " *Lahti*, 357 Mich at 589 (citation omitted). Thus, the Legislature's reinstatement of the prior legal standard, which "had been lost through" application of the *Jones* doctrine and which, according to the Legislature in 2016 PA 419, should have applied all along, works no unfairness and may

---

[8] The dissent also states that the discussion in *Brewer* of the reinstatement rule is dicta. "[S]tatements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007) (quotation marks and citations omitted). The discussion in *Brewer* is not dicta, given that it begins with the words "Further undermining" and then continues the analysis, demonstrating that it was part of the Supreme Court's rationale. The dissent's citation to *Hurd* also is unavailing, because *Hurd* did not discuss the four-part test of the *In re Certified Questions* line of cases, but merely relied on a lack of expressed legislative intent for retroactive application. See *Hurd*, 423 Mich at 535.

be applied retroactively because it was "designed to correct an existing oversight in the law or redress an existing grievance." *Davis*, 272 Mich App at 158-159, citing *Lahti*, 357 Mich at 589. Our analysis thus fully complies with the requirement that we look beyond the label of "remedial" to the substance of whether an amendment affects substantive rights. "[W]e have rejected the notion that a statute significantly affecting a party's substantive rights should be applied retroactively merely because it can also be characterized in a sense as "remedial":

> "In that regard, we agree with Chief Justice RILEY's plurality opinion in *White v General Motors Corp*, [431 Mich 387; 429 NW2d 576 (1988),] that the term "remedial" in this context should *only be employed to describe legislation that does not affect substantive rights*. Otherwise, the mere fact that a statute is characterized as remedial is of little value in statutory construction. Again, the question is one of legislative intent." [*Johnson*, 491 Mich at 433 (citation omitted).]

No one has a substantive right to litigate based on an erroneous legal rule; quite the contrary is true. The Legislature's action in repudiating and clarifying the correct interpretation of the *Jones* doctrine is thus remedial and plainly cannot violate any substantive right of plaintiff.

Because the Legislature has told us that the *Jones* doctrine never should have applied, it is not the case that 2016 PA 219 enacted a substantive change in the law. The dissent cannot explain how an abrogated doctrine, coupled with a legislative determination to instead impose the intended status quo ante and allow a defense which should have been applicable all along, can result in a duty and thus a vested right in plaintiff's favor, except by assuming that the *Jones* doctrine was the law all along. But by doing so, the dissent simply reiterates the rationale of *Jones*, implicitly rejecting the Legislature's authority to determine the propriety of *Jones* with regard to plaintiff under the circumstances applicable here.[9]

Moreover, to reach its conclusion, the dissent disputes that the open and obvious doctrine is a "defense" within the meaning of 2016 PA 219, by reading it in a technical manner as affecting the duty of a municipal corporation. However, "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate

---

[9] The dissent relies heavily on this Court's unpublished opinion in *Schilling v Lincoln Park*, unpublished per curiam opinion of the Court of Appeals, issued May 16, 2019 (Docket No. 342448). Few rules are as clearly established as that "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). Thus, it is beyond dispute that *Schilling* is not controlling. However, unpublished opinions may be cited for their persuasive value. See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). However, *Schilling* is not persuasive because it did not address the Legislature's overruling of the *Jones* doctrine, the reinstatement of the status quo ante, and the application of the *Brewer* rule, which are the major bases for the majority opinion here. Thus, it is not clear what value the dissent properly ascribes to *Schilling*.

meaning." MCL 8.3a. While the term "affirmative defense" has a technical legal meaning, the term "defense" does not. "An affirmative defense is a defense that does not controvert the establishment of a prima facie case, but that otherwise denies relief to the plaintiff." *Chmielewski v Xermac, Inc*, 216 Mich App 707, 712; 550 NW2d 797 (1996) (citation omitted), aff'd 457 Mich 593; 580 NW2d 817 (1998). "An affirmative defense presumes liability by definition." *Rasheed v Chrysler Corp*, 445 Mich 109, 132; 517 NW2d 19 (1994). A "defense," by contrast, is "[t]hat which is offered and alleged by the party proceeded against in an action or suit . . . to diminish plaintiff's cause of action or defeat recovery," *Roberson Builders, Inc v Larson*, 482 Mich 1138, 758 NW2d 284 (2008) (MARKMAN, J., dissenting), or "that which is alleged by the party proceeded against in a suit as a reason why plaintiff should not recover or establish what he seeks," *Gelman Sciences, Inc v Fireman's Fund Ins Cos*, 183 Mich App 445, 448; 455 NW2d 328 (1990). A defense, therefore, is a non-technical concept which can be either factual, legal, or a combination. And because it is a non-technical concept, it is construed through "common and approved usage of the language." MCL 8.3a.

Here, the Legislature created a statutory hybrid, under which municipalities are obligated to maintain sidewalks, but under which an injured party has no private right of recovery if a sidewalk nevertheless has an open and obvious defect because such an open and obvious defect is a "defense" to liability. 2016 PA 419, § 5. The Legislature is permitted to define terms and causes of action in such a manner, and by restoring the right to invoke as a "defense" the doctrine of open and obvious, which had been lost through the *Jones* doctrine, the Legislature in no way impaired any substantive right of plaintiff. See *Lahti*, 357 Mich at 589 (" '[N]o right is destroyed when the law restores a remedy which had been lost.' ").

Simply put, we find that the Legislature's enactment of 2016 PA 419, which did not legally bar plaintiff's cause of action, and through which the Legislature overruled the *Jones* doctrine and reinstated the pre-*Jones* state of the law, overcomes the presumption for prospective application and thus has retroactive effect to events which preceded its enactment, including plaintiff's injury. Therefore, defendant can avail itself of the open and obvious defense, and we next turn to an analysis of how the open and obvious doctrine applies to the facts of this case.

## II. OPEN AND OBVIOUS

Because the amendment has retroactive effect, we must determine whether there is a genuine issue of material fact on the question of whether the condition was open and obvious. Plaintiff argues that the trial court erred when it determined that the condition was open and obvious. We disagree.

This Court reviews de novo a lower court decision on a motion for summary disposition. *Moraccini*, 296 Mich App at 391. Summary disposition is appropriate under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In deciding a motion for summary disposition under this subrule, the moving party must "identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). If the moving party meets the required burden, the burden then shifts to the party opposing the motion to

provide "specific facts" that show that there is "a genuine issue of disputed fact." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The court evaluates all evidence "in the light most favorable to the party opposing the motion." *Id.*

A condition is open and obvious when "an average person of ordinary intelligence [would] discover the danger and the risk it presented on casual inspection." *Price v Kroger Co of Mich*, 284 Mich App 496, 501; 773 NW2d 739 (2009). This is an objective test. *Id.* Thus, because the test is objective, a court is to focus on "whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478-479; 760 NW2d 287 (2008).

In *Price*, the plaintiff was injured when she fell after walking into a "one-inch-long broken wire or 'barb' protruding from [a] bin at ankle level" at a grocery store. *Price*, 284 Mich App at 498-499. This Court held that there was a genuine issue of material fact regarding whether "an ordinary user upon casual inspection" could have discovered the wire because "[a] jury could reasonably infer that a casual inspection of the premises in which plaintiff shopped would not have revealed the barb, in light of its small size, its location at close to floor level, the impediment to visibility posed by the bulk of the candy-filled bin, and [an employee's] failure to detect the anomaly." *Id.* at 501-502.

In this case, plaintiff argues that the defect was not open and obvious because she saw only the crack in the sidewalk, not the height difference in the cement slabs after the crack. Defendant argues that the defect was open and obvious because plaintiff testified that she was not looking at the ground as she walked towards the store and because she admitted that she was able to see the defect.

While defendant supplied photographs of the area where plaintiff fell, these photographs were taken at some point after the area had changed because a tree which had been there at the time of plaintiff's injury was cut down by the time defendant's photo was taken. Plaintiff provided a screenshot from Google maps that showed that there was still a tree in that location on September 2016, several months after her injury. Plaintiff also provided a photograph in which the shade from the tree shows that the tree was still intact at the time of the photograph. However, plaintiff does not claim that the tree obscured her view of the defect at the time of her fall.

While plaintiff had been to Trend Express in the past, she testified that she had never entered the store through the front entrance prior to the date of her injury. It was raining and "darker" on the day of her injury, which could have obscured the dip in the sidewalk. However, plaintiff's photographs clearly show that the sidewalk was sloping at an upward angle (which was a different angle than the surrounding slabs of sidewalk) where she testified she tripped. Notably, plaintiff also testified that nothing was obscuring her view and that she did not discern the differing heights only because she was looking at the store rather than the ground, but not because the condition precluded her from being able to see the condition if she had looked. Indeed, plaintiff admitted that she would have seen the condition of the sidewalk if she had been looking. Thus, plaintiff would have "discover[ed] the danger and the risk it presented on casual

inspection." *Id*. at 501. As such, the condition was open and obvious, and the trial court properly granted defendant's motion for summary disposition on this ground.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Colleen A. O'Brien
/s/ Jonathan Tukel