PRICE v KROGER COMPANY OF MICHIGAN

Docket No. 281934. Submitted January 6, 2009, at Lansing. Decided June 18, 2009, at 9:00 a.m.

Terri and Douglas Price brought a premises liability action in the Ingham Circuit Court against the Kroger Company of Michigan after Terri Price fell on the floor of the defendant's grocery store. Just before she fell, Terri took several bags of candy from a waist-high, four-foot wide metal bin. After falling, she saw a one-inch wire protruding from the bin at ankle level and concluded that the protruding wire had snagged her pants and caused the fall. The court, Thomas L. Brown, J., granted summary disposition for the defendant, ruling that there were no genuine issues of material fact and the defendant was entitled to judgment because the danger posed by the protruding wire was open and obvious. The plaintiffs appealed.

The Court of Appeals *held*:

A business invitor owes an invitee a duty to inspect the premises for hazards that might cause injury. The duty encompasses not only warning an invitee of any known dangers, but the additional obligation to make the premises safe, which requires the invitor to inspect the premises and, depending on the circumstances, make any necessary repairs or warn of discovered hazards. However, where the dangers are known to the invitee or are so obvious that they would be discovered by an average person of ordinary intelligence upon casual observation, the invitor owes no duty to protect or warn the invitee unless the invitor should anticipate the harm despite knowledge of it by the invitee. In this case, summary disposition should not have been granted because the plaintiffs produced sufficient evidence to create a genuine issue of material fact concerning whether the danger posed by the wire was open and obvious. That factual question must be decided by the jury.

Reversed and remanded for further proceedings.

GLEICHER, J., concurring, stated that genuine issues of material fact existed with regard to whether the protruding wire created an unreasonable risk of harm and was sufficiently visible to qualify as posing an open and obvious danger. She stated that an unreason-

able risk of harm could be inferred from the fact that the bin was discarded after plaintiff Terri Price's fall. Judge GLEICHER disagreed with the dissent's contention that slight imperfections cannot qualify as unreasonably dangerous conditions and cannot supply a basis for liability. The reasonableness of a risk depends on whether its magnitude is outweighed by its utility. There is no utility inherent to a bin with a protruding wire that may snag clothing that can outweigh the risk of injury from the wire. Finally, the dissent turned premises liability on its head by imposing a duty on a business invitee to inspect an invitor's premises when it stated that the plaintiff should have inspected the bin.

BANDSTRA, J., dissenting, agreed that a business invitor has the duty to inspect the premises for hazards that might cause injury, not just to take precautions against the risks of dangers already known. However, a dangerous condition must involve an unreasonable risk of harm to an invitee and premises liability does not extend to conditions, like the one-inch protruding wire in this case, from which an unreasonable harm cannot be anticipated. Judge BANDSTRA further concluded that the danger posed by the protruding wire would have been open and obvious to a person of ordinary intelligence upon casual inspection. Accordingly, the trial court's grant of summary disposition for the defendant should be affirmed.

*Murphy's Law Office, P.C.* (by *James D. Murphy, Jr.*), for the plaintiffs.

*Maloney, McHugh & Kolodgy, Ltd.* (by *Sarah A. McHugh*), for the defendant.

Before: TALBOT, P.J., and BANDSTRA and GLEICHER, JJ.

GLEICHER, J. In this premises liability action, plaintiffs appeal as of right from a circuit court order granting defendant summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand, and decide this appeal without oral argument under MCR 7.214(E).[1]

---

[1] We publish this case pursuant to MCR 7.215(A). The majority did not request publication.

Plaintiff Terri Price visited a Kroger store while en route to work on the morning of February 6, 2004. Several hours before plaintiff arrived, Josephine Ridge, a Kroger employee, obtained a large wire bin from a back storage area and placed it in front of a checkout aisle. Ridge filled the bin with sale candy. Ridge admitted at her deposition that although she had inspected the bin before placing it on the shopping floor, she failed to notice any protruding wires.

Plaintiff described in deposition testimony that as she walked toward a checkout aisle, she noticed a square, waist-high metal basket, approximately four-feet wide, containing sale candy. Plaintiff approached the bin, reached into it, retrieved several bags of candy, and turned to walk away. While taking a first step toward the checkout aisle, plaintiff fell to the floor. From plaintiff's vantage point on the floor, she observed a one-inch-long broken wire or "barb" protruding from the bin at ankle level. Plaintiff testified that the candy-filled bin had blocked her view of the protruding wire before she fell. Plaintiff described her discovery of the protruding prong as follows:

> *Q.* When you were on the floor, you were able to see the part of the wire basket that protruded into the aisle approximately an inch?
>
> *A.* Yes, yes.
>
> *Q.* You were able to see its dimensions while you were on the floor?
>
> *A.* No, not really. I didn't actually know what caught me.
>
> *Q.* You removed it from your pant leg?
>
> *A.* When I scooted over, because I thought what, you know how you fall, you go what, and that's when I says [sic], oh, caught me, you know like that, yeah.
>
> *Q.* So when you realized what it was that caught your pant leg, you say that it was part of the wire basket?

*A.* Yeah, I wasn't sure. So I went over and I went, because I couldn't see it, I mean, I wouldn't have been able to see it—just walking up to it, you wouldn't see it.

*Q.* Why is that?

*A.* Because it was so low to the ground. It was probably this far from the ground.

*Q.* Would you say two or three inches from the ground?

*A.* Yeah, just at your ankles, or not your ankles, just tops of your shoes.

Ridge recalled that she "threw [the bin] in the trash compactor" after plaintiff's fall.

The circuit court granted defendant's motion for summary disposition under MCR 2.116(C)(10), ruling as a matter of law "that the condition complained of by Plaintiff was open and obvious." The court emphasized that plaintiff had conceded "that there was nothing blocking her view of the metal prong" and that "it is reasonable to conclude that Plaintiff would have not been caught on the metal prong had she been watching where she was going." The court additionally noted that plaintiff had "failed to produce evidence to create an issue of fact concerning whether an average person with ordinary intelligence would have discovered the condition upon casual inspection." The court further rejected "that the metal prong was unavoidable or posed an unreasonably high risk of severe injury."

This Court reviews de novo the circuit court's summary disposition ruling. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A court may grant summary disposition under subrule C(10) if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.* "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the

light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). When the record leaves open an issue on which reasonable minds could differ, a genuine issue of material fact exists that precludes summary disposition. *West, supra* at 183. A court may not make findings of fact when deciding a summary disposition motion. *Jackhill Oil Co v Powell Production, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995).

As the property owner in control of the premises, defendant owed plaintiff, a business invitee, a duty to inspect the premises for hazards that might cause injury. Plaintiff was entitled to "the highest level of protection" imposed under premises liability law. *James v Alberts*, 464 Mich 12, 20; 626 NW2d 158 (2001), quoting *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). The landowner's duty encompasses not only warning an invitee of any known dangers, " 'but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.' " *James, supra* at 19-20; quoting *Stitt, supra* at 597.

"However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). When a potentially dangerous condition "is wholly revealed by casual observation," the premises owner owes its invitees no duty to warn of the danger's existence. *Novotney v*

*Burger King Corp (On Remand)*, 198 Mich App 470, 474; 499 NW2d 379 (1993). This is so because "an obvious danger is no danger to a reasonably careful person." *Id.* at 474. The test for an open and obvious danger focuses on the inquiry: Would an average person of ordinary intelligence discover the danger and the risk it presented on casual inspection? *Id.* at 475.

Our Supreme Court has explicitly cautioned that when applying this test, "it is important for courts . . . to focus on the objective nature of the condition of the premises at issue, not the subjective degree of care used by the plaintiff." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523-524; 629 NW2d 384 (2001). The proper question is not whether *this plaintiff* could or should have discovered the protruding wire, but whether the wire was observable to the average, casual observer. *Novotney, supra* at 475. See also *Lugo, supra* at 523:

> The trial court's remarks indicate that it may have granted summary disposition in favor of defendant because the plaintiff "was walking along without paying proper attention to the circumstances where she was walking." However, in resolving an issue regarding the open and obvious doctrine, the question is whether the *condition of the premises* at issue was open and obvious . . . . [Emphasis in original.]

We conclude that plaintiffs produced "sufficient evidence to create a genuine issue of material fact that an ordinary user upon casual inspection could not have discovered the existence" of the one-inch-long, ankle-level wire. *Novotney, supra* at 475. The evidence of record establishes that neither plaintiff Terri Price nor defendant knew that a wire protruded from the bin until after plaintiff fell. Given the extremely small size of the offending barb and its location immediately adjacent to the wire bin at ankle level, we reject the

circuit court's conclusion that, as a matter of law, plaintiff should have discovered it "upon casual inspection" of the bin. A jury could reasonably infer that a casual inspection of the premises in which plaintiff shopped would not have revealed the barb, in light of its small size, its location at close to floor level, the impediment to visibility posed by the bulk of the candy-filled bin, and Ridge's failure to detect the anomaly, notwithstanding her greater ability and opportunity to examine the bin before placing it in an area of the store accessible to shoppers like plaintiff.

In conclusion, because the record gives rise to a material question of fact regarding whether the danger posed by the protruding wire qualified as open and obvious, a jury must make this factual determination.

We reverse the circuit court's order granting summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

TALBOT, P.J., concurred.

GLEICHER, J. (*concurring*). I write separately to respectfully respond to the legal arguments advanced by the dissent.

The dissent posits that the small wire prong that caused plaintiff's fall constituted a defect so inconsequential that its presence cannot create a legal basis for defendant's liability to plaintiff. According to the dissent, "no reasonable fact-finder could find that . . . the one-inch wire was a dangerous condition presenting an unreasonable risk of harm." *Post* at 510. But this contention is readily refuted by the fact that Josephine Ridge, defendant's employee, discarded the bin immediately after learning that the barb caused plaintiff's

fall. The only rational inference to arise from this action is that Ridge believed the bin presented an unreasonable risk of harm to other customers. Furthermore, the question whether the barb constituted an unreasonable danger despite its small size is properly for the jury to decide. In *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995), our Supreme Court held that "[i]f the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide." Ridge's conduct, without more, creates a genuine issue of fact regarding the reasonableness of the danger.

I also respectfully disagree with the basic premise of the dissent that "slight imperfections" cannot qualify as unreasonably dangerous conditions and cannot supply a basis for liability "in the legal course of things." *Post* at 507-508. In *Moning v Alfono*, 400 Mich 425, 450; 254 NW2d 759 (1977), our Supreme Court explained that "[t]he reasonableness of the risk depends on whether its magnitude is outweighed by its utility." The Supreme Court derived the risk-utility analysis from the 2 Restatement of Torts, 2d, § 291, which provides:

> "Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done." [*Moning, supra* at 450, quoting Restatement Torts, 2d, § 291.]

The Supreme Court emphasized in *Moning* that

> [t]he balancing of the magnitude of the risk and the utility of the actor's conduct requires a consideration by the *court and jury* of the societal interests involved. The issue of negligence may be removed from jury consideration if the court concludes that overriding considerations of public

policy require that a particular view be adopted and applied
in all cases. [*Id.* (emphasis in original).]

Here, I discern no utility inherent to a bin with a
protruding wire at its bottom that may snag clothing or
skin. The risk that many shoppers would fall or suffer
serious injury because of the barb may be relatively
small. Nevertheless, the law attaches a significant social
value to providing business invitees with safe premises.
See *Bertrand, supra* at 609:

> Essentially, social policy imposes on possessors of land a
> legal duty to protect their invitees on the basis of the
> special relationship that exists between them. The ratio-
> nale for imposing liability is that the invitor is in a better
> position to control the safety aspects of his property when
> his invitees entrust their own protection to him while
> entering his property.

The cost of preventing harm from the bin was appar-
ently negligible, as reflected by Ridge's decision to
promptly consign the bin to the trash. Because the
risk-utility equation slants convincingly toward risk
with no countervailing utility, I disagree with the dis-
sent's contention that the small barb, as a matter of law,
did not create an unreasonable risk of harm. At trial,
the defense remains at liberty to adopt the dissent's
view, and to argue that the prong is simply too small
and too inconsequential to have created an unreason-
able risk of harm.[1] But because reasonable people can
differ regarding the risk presented by the protruding
prong compared with its utility, and because no relevant

---

[1] If defendant pursues this argument, Ridge's deposition testimony is
admissible under MRE 407 as impeachment to rebut that the prong did
not present an unreasonable risk of injury. Furthermore, "[w]hen a party
deliberately destroys evidence, a presumption arises that if the evidence
were produced at trial, it would operate against the party who deliber-
ately destroyed it." *Ritter v Meijer, Inc*, 128 Mich App 783, 786; 341 NW2d
220 (1983).

social policy exists exempting defective bins from the reach of tort law, a jury should decide whether to impose liability on defendant for plaintiff's fall.

The dissent embodies a second misapprehension of tort law. According to the dissent, in a premises liability case

> the standard is whether an average person with ordinary intelligence, having casually inspected the premises, *in this case the bin with its protruding wire*, would have noticed the danger presented by the wire. . . . Plaintiffs admit in their brief that Terri "had no reason to casually inspect" the basket, apparently conceding that she did not do so. Further, she admits that "if she had made such an inspection, she would have, or may have seen the wire protruding slightly from the side of the bin." [*Post* at 511 (citation omitted; emphasis added).]

No caselaw supports the existence of a duty by plaintiff to inspect the bin. Were that the test, every aspect of an invitor's premises harboring a latent danger would automatically qualify as open and obvious. That plaintiff failed to discern a need to inspect the bin is entirely irrelevant to the question whether the danger posed by the protruding wire was open and obvious to the casual observer. Furthermore, the dissent's assertion that plaintiff bore a duty to inspect the bin turns the law of premises liability on its head. The property owner in control of the premises, and not the invitee, owes a duty to inspect the premises for hazards that might cause injury. As a business invitee, plaintiff was entitled to "the highest level of protection" imposed under premises liability law. *James v Alberts*, 464 Mich 12, 20; 626 NW2d 158 (2001), quoting *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). The landowner's duty encompasses not only warning an invitee of any known dangers, " 'but the additional obligation to also make the premises safe,

which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs . . . .' " *James, supra* at 19-20; quoting *Stitt, supra* at 597. Ridge claimed to have inspected the bin, but admitted that she failed to notice the wire. The dissent entirely excuses Ridge's negligence by asserting that the barb was too small to create any duty on the part of defendant, but imposes on *plaintiff* the duty to have spotted the barb's presence before reaching into the bin. As the dissent would have it, a landowner's duty to make its premises safe for an invitee simply evaporates if the invitee fails to perform a more careful inspection of the premises than that accomplished by the landowner.

Once again, defendant remains entitled to adopt the dissent's position at trial and to argue to a jury that plaintiff's failure to closely inspect the contours of the bin before reaching into or walking away from it constitutes comparative negligence. But no caselaw suggests that in the absence of an open and obvious danger, plaintiff's negligence in not inspecting the bin eliminates her premises liability claim. In an action based on tort, "a plaintiff's contributory fault does not bar that plaintiff's recovery of damages." MCL 600.2958.

Because genuine issues of material fact exist with regard to whether the protruding wire created an unreasonable risk of harm and was sufficiently visible to qualify as open and obvious, the majority properly concludes that the circuit court improperly granted summary disposition to defendant.

BANDSTRA, J. (*dissenting*). I respectfully dissent and would affirm.

Anyone confronted with the physical world knows that accidents happen. As a result, people sometimes

get hurt. In the natural course of things, the injured person bears the cost of the accident. In the legal course of things, an injured person may become a plaintiff and seek to impose the cost of an injury upon someone else.

Generally, our tort law is designed to fairly determine when an injured person may succeed in that quest. In other words, an injured person may not do so in every case; not every accident results from the action of a culpable party. Instead, a plaintiff must meet the burden of proof that our law has established for whatever theory of liability is advanced.

The theory plaintiffs advance here is one of premises liability and, more specifically, premises liability with respect to an invitee. As the lead opinion correctly points out, in this context our law imposes the highest obligation on a possessor of property, the duty to inspect the premises for hazards that might cause injury, not just to take precautions against the risks of any dangers that are already known.

Nonetheless, there must be some significant danger or hazard which, upon inspection, the possessor should have detected. Our law in this area stems from the Second Restatement of Torts and its provisions regarding "dangerous conditions" that involve "an unreasonable risk of harm" to invitees. See, e.g., *Bertrand v Allen Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995), quoting 2 Restatement Torts, 2d, § 343, pp 215-216. Ever since *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988), according to our Supreme Court, a possessor's duty is "to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." See *Bertrand, supra* at 609; *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001); *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425 n

2; 751 NW2d 8 (2008). As emphasized by Justice CA-VANAGH, the dangerous condition must involve "an *unreasonable* risk of harm" to an invitee, *Bertrand, supra* at 609 (emphasis in original). Accordingly, as Justice CAVANAGH stated in *Williams, supra* at 500, a premises possessor's obligation is not "absolute"; invitee premises liability "does not extend to conditions from which an unreasonable risk cannot be anticipated." So, to impose liability on a possessor, an invitee must show not only that there was a risk, but also that the risk was unreasonable.

As suggested earlier, our physical world is filled with a myriad variety of slight imperfections (e.g., misaligned joints, sharp corners, misshapen surfaces, etc.) that may cause bruises, abrasions, or other accidental injuries. The question here, under the Supreme Court cases just discussed, is simple: did the one-inch wire, protruding from the bin about half the length of an average adult pinky finger, constitute a "dangerous condition" presenting "an unreasonable risk of harm"? Or, instead, was it a "condition from which an unreasonable risk (could not) be anticipated"? As suggested by Justice CAVANAGH in his use of the word "anticipated," we cannot determine that question retrospectively, i.e., taking into account the fact that a harm has allegedly occurred because of the one-inch wire. Instead, the question is whether defendant here could have anticipated in advance that the one-inch wire was a "dangerous condition" presenting an "unreasonable risk" to customers like plaintiff.

It is on this point that the concurring opinion goes awry. My colleague does not offer any evidence upon which the fact-finder might reasonably conclude that, before the accident occurred, defendant should have realized that the one-inch wire was a dangerous condi-

tion presenting an unreasonable risk of harm. Instead, the concurring opinion only points to evidence that one of defendant's employees removed the bin after the accident occurred. That evidence is simply irrelevant to the real question here, whether an unreasonable risk should have been anticipated beforehand. Further, this irrelevant evidence could not be presented to the fact-finder for any consideration whatsoever under the subsequent remedial measure proscription of MRE 407.

Similarly, the concurring opinion misplaces the "risk-utility analysis" that precedents suggest is useful to determine whether the risk of the one-inch wire was unreasonable. I agree that, following the accident, the then-known risk of the one-inch wire outweighed the utility of removing it. But, that has nothing to do with what defendant should have anticipated before the accident occurred, under Justice CAVANAGH's formulation. *Williams, supra* at 500.

Certainly, as suggested in the concurring opinion, the arguments I am making here could be presented to the fact-finder, and I would hope that they would be persuasive. Still, I see no need to foist upon defendant the costs of further litigation under the facts presented here and the law applicable to them. Neither should defendant have to risk the possibility of liability being imposed at trial and the costs that would no doubt result in trying to undo such an unfounded result. Although some might disagree, not every personal injury lawsuit that is filed deserves to go to the fact-finder; that is why we have a well-developed body of rules and caselaw allowing summary dispositions.

Finally, as I write this opinion, our state leads the nation in its unemployment rate. I cannot avoid commenting on how the result here will further discourage employers from locating in Michigan. Most employers

have premises frequented by invitees of one kind or another. The decision rendered by my colleagues today strips away the minimal protection previously afforded by the Supreme Court precedents already discussed. It foists potential liability upon business invitors for miniscule risks that are only reasonably discoverable after, and because of, an alleged accident.

I would initially conclude that no reasonable fact-finder could find that, before plaintiff Terri Price's alleged accident, the one-inch wire was a dangerous condition presenting an unreasonable risk of harm. Therefore, defendant had no duty to remove that one-inch wire.[1]

Regarding the issue discussed in the lead opinion, I further conclude that the open and obvious danger doctrine would apply to absolve defendant of any liability, even if the one-inch wire were a dangerous condition presenting an unreasonable risk of harm. Photographic

---

[1] Courts that, like Michigan courts, apply the Restatement approach regularly adopt this analysis with this result. See, e.g., *Campisi v Acme Markets, Inc*, 915 A2d 117, 119-120 (Pa Super, 2006) (affirming a judgment notwithstanding a verdict in favor of a plaintiff, the court reasoned that a blind person, whose cane the plaintiff allegedly tripped over, was not a "harmful condition" on the defendant's premises sufficient to establish any legal duty); *Fredrickson v Bertolino's Tacoma, Inc*, 131 Wash App 183, 188-191; 127 P3d 5 (2006) (affirming a summary judgment granted to a defendant, the court reasoned that the evidence was insufficient to show that the defendant's coffee shop chair, which allegedly broke beneath the plaintiff, posed an unreasonable risk of harm to customers); *CMH Homes, Inc v Daenen*, 15 SW3d 97, 99-103 (Tex, 2000) (overturning a judgment for a plaintiff, the court reasoned that there was insufficient evidence showing that the alleged instability of steps upon which the plaintiff was injured was a danger that the defendant should have known created an unreasonable risk of harm); *Hartung v Maple Investment & Dev Corp*, 243 Ill App 3d 811, 815-817; 612 NE2d 885 (1993) (the court reasoned that a small defect in a privately owned sidewalk did not present an unreasonable risk of harm to invitees and that, therefore, the possessor of the sidewalk could not be liable for an injury resulting from that defect).

evidence of bins similar to the bin that allegedly caused injury to Terri Price shows that the wire composition of the bins is obvious. Terri admitted at her deposition that there was more than one wire sticking out of the bin into which she reached. She testified, in part, "it had these little prongs, and these little prong things were sticking out toward the—you know, like if you were going to the flow of the traffic here, they were sticking out of this corner." Terri testified that the particular wire that caught her pant leg was located at ankle level, about two or three inches above the floor. She claimed that she did not see that wire before she fell, but she did not identify anything that could have blocked her view.

Terri's testimony that she did not see the wire before the alleged accident is irrelevant to whether the danger was open and obvious. *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 475; 499 NW2d 379 (1993). Instead, the standard is whether an average person with ordinary intelligence, having casually inspected the premises, in this case the bin with its protruding wire, would have noticed the danger presented by the wire. *Id.*[2] In other words, Terri was obligated to watch where she was going and be generally aware of her physical environment, to avoid injuries like the one she claims resulted from the one-inch wire. Plaintiffs admit in their brief that Terri "had no reason to casually inspect" the basket, apparently conceding that she did not do so. Further, she admits that "if she had made such an inspection, she would have, or may have seen the wire protruding slightly from the side of the bin."

---

[2] *Novotney* and numerous other open and obvious danger precedents are themselves the "caselaw [that] supports the existence of a duty by plaintiff to inspect the bin." See *ante* at 505. (GLEICHER, J., concurring).

DISSENTING OPINION BY BANDSTRA, J.

Viewed in a light most favorable to plaintiffs, the evidence did not create a genuine issue of material fact regarding whether an average person of ordinary intelligence would have been able to discover the danger posed by the protruding wire upon casual inspection of the bin. Because reasonable minds could not differ in finding that the danger was open and obvious, I would conclude that the trial court properly granted summary disposition in favor of defendant with respect to this issue.