*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY SPRAGGINS,

Plaintiff-Appellant,

v

THIRD JUDICIAL CIRCUIT OF MICHIGAN,

Defendant-Appellee.

UNPUBLISHED
July 2, 2020

No. 345636
Wayne Circuit Court
LC No. 17-000563-CD

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

In this employment discrimination case brought under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*., plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

This case arises from defendant's termination of plaintiff's employment at the conclusion of her 18-month, long-term disability leave. Plaintiff started working for defendant in 1990 as a typist. By 2012, she was employed as an Information Specialist II. In February 2012, plaintiff injured her knee while walking down the stairs at her home. Defendant approved plaintiff's request for long-term disability benefits and leave under the Family and Medical Leave Act (FMLA), 26 USC 2601 *et seq*. Plaintiff returned to work in May 2012.

In August 2013, plaintiff reported suffering from knee and back pain and again requested leave under the FMLA and long-term disability benefits. Defendant approved these requests as well. On February 14, 2014, defendant notified plaintiff that "[w]ith extensions, a leave without pay may not exceed eighteen (18) months" and that as a result, plaintiff's employment would be terminated effective February 26, 2015, if she had not returned to work by then. In October 2014, plaintiff underwent a total right knee replacement.

On January 21, 2015, plaintiff's surgeon, Dr. James J. Verner, informed defendant that plaintiff was to remain off work through April 19, 2015. On February 6, 2015, defendant sent plaintiff a separation letter, again noting that plaintiff's employment would terminate, effective February 26, 2015. On February 11, 2015, Dr. Verner sent a fax to defendant, this time stating

that plaintiff could return to work on February 26, 2015, with a restriction of "limited walking and standing." Defendant's Executive Director of Human Resources, Benita Cheatom, reviewed Dr. Verner's latest fax and determined that the language "limited walking and standing" was too vague. In response, Dr. Verner sent another fax on February 16, 2015, stating that plaintiff could return to work on February 26 with the following restriction:

> No walking more than 5 minutes at a time. Limited standing no more that [sic] 5 mins at a time. Due to patients [sic] pain level.

On February 20, 2015, Cheatom sent a letter to plaintiff, informing her that defendant could not reasonably accommodate this request and that plaintiff was to remain off of work until that restriction was removed. On February 26, 2015, with plaintiff's walking and standing limitation still in place, plaintiff appeared at work. But consistent with its prior declarations, defendant terminated plaintiff's employment.

Plaintiff filed suit against defendant, alleging that she was able to perform the essential job functions of her prior position with reasonable accommodations and that defendant intentionally discriminated against her "by discharging her without engaging in the interactive process to determine a reasonable accommodation."

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to present a prima facie case of discrimination under the PWDCRA because there was no question that plaintiff was unable to perform her job functions with her limitations. Defendant further argued that to the extent plaintiff alleged that defendant failed to accommodate her disability, that claim necessarily fails because plaintiff never made any request for an accommodation. Specifically, defendant argued that, while the fax from plaintiff's doctor mentioned plaintiff's *limitations*, it was not a request for an *accommodation*.

The trial court agreed with defendant and granted the motion. This appeal followed.

## I. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The motion is properly granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

## II. DISCRIMINATION CLAIM

Plaintiff argues that the trial court erred when it granted summary disposition on her claim that defendant discriminated against her. Specifically, plaintiff maintains that the trial court erred when it determined that there was no question of fact regarding the job duties of an Information Specialist II and regarding plaintiff's ability to perform those duties.

MCL 37.1202 of the PWDCRA provides, in pertinent part:

(1) Except as otherwise required by federal law, an employer shall not:

(a) Fail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

(c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

(d) Fail or refuse to hire, recruit, or promote an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

(e) Discharge or take other discriminatory action against an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

Thus, "[u]nder MCL 37.1202(1)(a)-(e), which prohibit employment discrimination, an 'employer' shall refrain from taking any of a number of adverse employment actions against an individual 'because of a disability . . . that is unrelated [or not directly related] to the individual's ability to perform the duties or a particular job or position.' " *Peden v Detroit*, 470 Mich 195, 203-204; 680 NW2d 857 (2004) (ellipsis and second alteration in *Peden*).

"The plaintiff bears the burden of proving a violation of the PWDCRA." *Id*. at 204. To prove a claim of discrimination under the PWDCRA, a plaintiff must show that (1) she is disabled as defined in the act, (2) the disability is unrelated to her ability to perform her job functions, and (3) she has been discriminated against by one of the enumerated ways mentioned in the statute. *Id.* In its motion for summary disposition, defendant claimed that plaintiff was unable to prove the second element: that plaintiff's disability was unrelated to her ability to perform her job functions.

## A.  IDENTIFYING THE DUTIES OF THE JOB

The first step is to identify the duties of a particular job.  See *id*. at 217-220.  "[I]n disputes regarding what the duties of a particular job are, the employer's judgment is entitled to substantial deference." *Id*. at 219.  This is so even at the summary disposition phase, when courts are liberal in finding factual disputes.  See *id*. at 219-220; *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d

1 (2008). In this case, defendant has identified the following "essential functions" of an Information Specialist II, as noted in its March 27, 2014 job description:

1.  Responds to all inquiries in a customer-service oriented matter.

2.  Records information in court files.

3.  Furnishes court forms and documents.

4.  Provides account information to attorneys. Family Independence Agency (FIA) and other public agency inquiries.

5.  Researches complaints and provides system generated responses where applicable.

6.  Receives and updates account information.

7.  Computes and verifies account arrearage.

8.  Receives escalated enforcement inquiries.

9.  Initiates inquiries to appropriate departments and outside agencies.

10.  Verifies completion of inquiries to other departments and with follow-up.

11.  Maintains daily and monthly statistical data.

12.  Assists in training of staff by serving as a lead worker as required.

13.  Performs other job related duties as assigned.

The job description also includes the following statement:

> The above statements describe the general nature and level of work performed by employees assigned to the class. Incumbents may be required to perform job-related responsibilities and tasks other than those stated in this description. Specific job duties vary from position to position.

John Frasik, defendant's Director of the Family Assessment Department and plaintiff's supervisor before she went on leave, testified that an information specialist's "job is to accommodate the referee [to which she is assigned] to make sure the docket runs smoothly. That is her function." Frasik further explained that because the referee plaintiff had been working with retired while plaintiff was on leave, plaintiff most likely would have been assigned to assist Referee Anita Scott-Meisel. Referee Scott-Meisel testified that, at the time of plaintiff's potential return, she was starting a new, specialized, "high volume" docket involving only postjudgment parenting-time matters. Referee Scott-Meisel also said that information specialists assigned to her are responsible for, *inter alia*, making copies of documents that parties produce during the hearings,

transporting mail to and from the courtroom and, if necessary, monitoring litigants in and around the courtroom. Cheatom testified that an Information Specialist II also was required "to file, to transport mail, to deliver records, to go from courtroom to courtroom, to transmit and transport information."

In opposing defendant's motion for summary disposition, plaintiff did not seriously contest what constituted her job duties.[1] Indeed, plaintiff admitted in her deposition that the job required her "to provide clerical assistance" to the referee by performing tasks such as opening the courtroom, printing paperwork, processing referee recommendations, providing direction, answering the phone, scheduling hearings, adjourning hearings, and processing the mail.

The trial court, in determining what the position's duties were, stated, "[T]he Court finds that the position of Information Specialist II would not have been merely a desk job but would have instead required standing and/or walking for more than 5 minutes at a time (*i.e.*, locating a copy machine and making copies, getting the mail, and assessing the tenor of the individuals in the courtroom in the absence of a deputy)." The trial court erred in two regards. First, the court should not make any "findings" when deciding a motion for summary disposition. *Price v Kroger Co of Mich*, 284 Mich App 496, 500; 773 NW2d 739 (2009). Second, to the extent that the trial court's use of the word "finds" simply was meant to convey its ruling that there was insufficient evidence to create a question of fact on this issue—as opposed to a true factual finding—the court's injection of a temporal aspect into the job duties was erroneous. Instead, the identified tasks of the job were to make copies and get the mail. There was no *requirement or duty* that the tasks take more than five minutes. How long it takes to perform a particular task is a distinct question from identifying whether a particular task is part of a job's duties. Thus, the evidence shows that there is no question of fact that the duties of an Information Specialist II included making copies, getting the mail, performing general clerical duties, and if necessary, monitoring litigants in and around the courtroom.

## B. PLAINTIFF'S ABILITY TO PERFORM THESE DUTIES

After the job's duties are established, the question becomes whether the evidence shows that the plaintiff could have performed those duties, either with or without an accommodation. *Peden*, 470 Mich at 220. As previously mentioned, the trial court identified three different tasks that plaintiff could not perform because it would take her more than five minutes of standing or walking: making copies, getting the mail, and monitoring litigants.

There was a factual dispute regarding how long it would take to make copies. Referee Scott-Meisel testified that a "significant" amount of travel would be needed to make copies because the nearby copier was often unavailable so it could take between 10 and 15 minutes to accomplish a copying task, or even up to 20 minutes. But Referee Joe Schewe, the referee plaintiff supported before she went on leave and who has since retired, stated in an affidavit that making copies would not take more than five minutes. The trial court downplayed this factual discrepancy

---

[1] The thrust of plaintiff's argument was that she could have performed these duties.

by noting that the referee plaintiff would be supporting, Referee Scott-Meisel, was assigned to a different type of parenting-time docket.[2] While Referee Scott-Meisel had a significantly different type of docket as opposed to the type Referee Schewe had when plaintiff was working, this fact does not speak to the particular task of copying papers. Importantly, there was no evidence introduced to show that the task of making copies was somehow different depending on the type of docket the referee was running; in either instance, the Information Specialist II must locate an available copier and make copies. Simply put, there is no evidence to suggest that the physical task of making copies was any different depending on which referee an Information Specialist II was assigned to support or that it would take longer to make copies for Referee Scott-Meisel instead of Referee Schewe. Thus, the trial court erred by failing to rule that there was a factual question regarding how long it would take for an Information Specialist II to make copies. Rather, there is a factual question whether plaintiff could perform copying tasks with her five-minute walking and standing limitation.

Whether there was a factual question regarding whether plaintiff could successfully monitor litigants both inside and outside the courtroom is a closer question. Referee Scott-Meisel testified that when her information specialists have done that task before, it has taken more than 10 minutes. On the other hand, Referee Schewe stated in an affidavit that the duties of an information specialist, other than mail collection, did not require her to stand or walk for more than five minutes. However, Referee Schewe apparently did not contemplate the task of "monitoring litigants" when he made that statement. In his affidavit, he specified that the "main job duties" of an Information Specialist II included "updating records on the computer, checking people into the courtroom, providing requested information, and answering the phone." Thus, because it does not appear that he considered this duty when he made his statement, Referee Schewe's general statement that no tasks other than mail collection took more than five minutes is insufficient to create a question of fact on this issue. To the extent that Referee Schewe may not have ever required his information specialists to perform this task, that is not controlling because Referee Scott-Meisel indicated that she "heavily relied" on her information specialists to do this task. Referee Scott-Meisel also stated that it would be highly impractical to not be standing while accomplishing this task because it involved asserting authority over the litigants. Moreover, there is no guarantee that even if one could perform this task while seated, there would have been room available on the public benches outside the courtroom for the Information Specialist II to utilize. Thus, with no evidence to conflict Referee Scott-Meisel's testimony that this task can take more than 10 minutes to accomplish and also requires the person to be in a standing position, plaintiff failed to establish a question of fact on this issue.

There also is no question of fact that collecting and delivering the mail would take more than five minutes. Referee Schewe stated in his affidavit that all of plaintiff's assigned duties did not require her to stand or walk for more than five minutes at a time, *except for the task of collecting and delivering the mail*. Referee Schewe explicitly stated that "mail collection" required the Information Specialist II "to stand or walk for more than five minutes at a time." Referee Scott-

---

[2] The trial court stated, "To the extent that Schewe's affidavit conflicts with the testimony of Scott-Meisel, Schewe never stated that he possessed personal knowledge of how Scott-Meisel managed her docket," which the court previously noted was a new "high volume parenting time docket."

Meisel testified that her courtroom was on the 19th floor of the building and that the mail room was on the 7th floor. Further, Referee Scott-Meisel testified that there were no chairs or seats available to plaintiff to use in or around the mail room. Thus, plaintiff has failed to show that there is a question of fact that the task of collecting and delivering the mail would take anything but more than five minutes to accomplish.

Therefore, while there is a question of fact whether plaintiff could have performed the task of making copies with her limitations, there is no question of fact that she could not have performed the tasks of monitoring the litigants and retrieving the mail from the mail room, given her physical limitations. Importantly, "the mere fact that a disabled person can perform 'some' of the job is not relevant; rather, [s]he must be able to perform *the* job [s]he sought at the time the alleged PWDCRA violation occurred." *Peden*, 470 Mich at 206 n 9. As a result, the trial court properly granted summary disposition in favor of defendant on plaintiff's discrimination claim under the PWDCRA. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) (stating that this Court can affirm the trial court ruling as long as the right result was reached).

## III. FAILURE-TO-ACCOMMODATE CLAIM

Plaintiff also argues that the trial court erred when it ruled that she could not prevail on her failure-to-accommodate claim because she never made an accommodation request.

In this case, the purported request for an accommodation was the fax sent by Dr. Verner, which stated that plaintiff could return to work with the following limitation:

> No walking more than 5 minutes at a time. Limited standing no more that [sic] 5 mins at a time. Due to patients [sic] pain level.

Defendant claims that this "request" is deficient because (1) it was not sent by plaintiff, i.e., the person with the disability, and (2) while the fax mentions plaintiff's physical limitations, it does not detail an actual accommodation request.

In analyzing the PWDCRA, Michigan courts may look to the federal Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., and federal cases interpreting the ADA for guidance, although we are not obliged to follow federal precedent. *Chile v Machine Shop, Inc*., 238 Mich App 462, 472; 606 NW2d 398 (1999). Regarding accommodation, the general rule under the ADA is that "the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is reasonable." *Monette v Elec Data Sys Corp*, 90 F3d 1173, 1183 (CA 6, 1996), abrogated not in relevant part, *Lewis v Humboldt Acquisition Corp, Inc*, 681 F3d 312 (CA 6, 2012). Moreover, "[i]f a disabled employee does not propose an accommodation, the 'failure to accommodate' claim must fail." *Backhaus v Gen Motors LLC*, 54 F Supp 3d 741, 752 (ED Mich, 2014) (quotation marks and citation omitted). Nevertheless, federal courts have recognized an exception to this general rule, acknowledging that "[i]n certain situations a request for accommodation can be inferred by context." *Aldini v Kroger Co of Mich*, 628 Fed Appx 347, 351 (CA 6, 2015) (where the defendant treated a doctor's letter stating that the plaintiff could not lift more than 25 pounds as a request to accommodate that restriction).

The issue is somewhat murkier under the PWDCRA. MCL 37.1102(2) requires in relevant part that an employer accommodate a person with a disability "unless the [employer] demonstrates that the accommodation would impose an undue hardship." The phrase "the accommodation" suggests an accommodation proposed by the disabled person. It would not make sense if the employer proposed an accommodation only to then determine that it imposed an undue hardship. On the other hand, MCL 37.1210(18) provides that a person with a disability "may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed." This suggests that the disabled person need only inform the employer that he or she needs an accommodation, without necessarily proposing one, at least within the 182-day time limit. Case law is scant, but appears to adopt the federal approach that places the burden of proposing an initial accommodation on the disabled person. See *Lindberg v Livonia Pub Sch*, 219 Mich App 364; 556 NW2d 509 (1996)[3]

We do not think that *Lindberg* forecloses the possibility that "in certain situations a request for accommodation can be inferred by context." *Lindberg* did not involve a plaintiff who failed to propose an accommodation. Rather, it involved a plaintiff who obtained his proposed accommodation, injured himself nonetheless, and then filed a claim against the defendant under the Handicappers' Civil Rights Act (HCRA), precursor to the PWDCRA, alleging that the defendant had denied him an equal opportunity to secure a vocational education by failing to accommodate him. This Court disagreed, pointing out that, although the law requires employers to make certain accommodations, the law "does not impose on them the initial obligation to determine which accommodations are necessary to respond to each individual's distinct handicap or special needs." *Lindberg*, 219 Mich App at 367-368.

In the present case, it is readily apparent that defendant inferred from Dr. Verner's note detailing plaintiff's limitations a request for a corresponding accommodation, i.e., that plaintiff not be required to stand or walk more than five minutes at a time. Defendant then determined that the requested accommodation was unreasonable, given the nature of the assistance plaintiff's position required her to provide the referee to whom she would be assigned. Plaintiff has not proposed that defendant had an obligation to suggest alternatives. See *Arndt v Ford Motor Co*, 247 F Supp 3d 832, 856-857 (ED Mich, 2017), aff'd 716 Fed Appx. 519 (CA 6, 2017) (noting that an employer is not obligated to affirmatively suggest alternative accommodations for an employee while investigating the single accommodation proposed by the employee). As the trial court noted, accommodation requests initiated by plaintiff could have taken the form of asking for a copying machine to be located closer to the courtroom or asking that chairs be placed in strategic locations

---

[3] See also *Ayer v Hare Express*, *Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 15, 2004 (Docket No. 243228) (holding that a doctor's note stating that the plaintiff could not work more than 40 hours or lift more than 10 pounds was not a request for an accommodation). Although unpublished opinions are not binding precedent, this Court may consider them as instructive or persuasive. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

within the building to allow plaintiff to rest while on her walking duties.[4]  Because plaintiff failed to establish that a material question of fact existed as to whether she could have performed the tasks of monitoring the litigants and retrieving the mail from the mail room—two of her essential job duties—with certain reasonable accommodations, her PWDCRA claim fails.  See *Peden*, 470 Mich at 220.  Accordingly, defendant's motion for summary disposition was properly granted.

Affirmed.  Defendant is entitled to costs as the prevailing party.  See MCR 7.219(A).


/s/ Jane M. Beckering
/s/ Cynthia Diane Stephens

---

[4] Like the trial court, we offer no opinion whether such requests would have been reasonable or should have been granted.