*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU INSURANCE COMPANY,

        Plaintiff/Counterdefendant-Appellee,

v

RHONDA LEE MEADOWS,

        Defendant/Cross-Defendant,

and

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Defendant/Counterplaintiff/Cross-
        Plaintiff/Third-Party Plaintiff-
        Appellant,

and

ROBERT SEPPALA, Personal Representative of the
ESTATE OF RONALD SEPPALA, and VHS OF
MICHIGAN, INC., doing business as DETROIT
MEDICAL CENTER,

        Third-Party Defendants-Appellees.

UNPUBLISHED
January 12, 2023

No. 358188
Wayne Circuit Court
LC No. 19-011363-NI

Before: CAVANAGH, P.J., and O'BRIEN and RICK, JJ.

PER CURIAM.

In this action seeking reimbursement under the no-fault act, MCL 500.3101 *et seq.*, Pioneer State Mutual Insurance Company (Pioneer) appeals as of right, challenging the trial court's order denying its motions for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), and granting summary disposition in favor of Farm Bureau Insurance Company

-1-

(Farm Bureau) pursuant to MCR 2.116(I)(2).[1]  We reverse and remand for entry of an order granting Pioneer's motion for summary disposition.

## I.  FACTS AND PROCEEDINGS

This case arises from a motor vehicle accident that occurred on May 22, 2017.  Rhonda Meadows was the driver of a 1999 Ford Explorer insured by Pioneer, in which her ex-husband, Ronald Seppala,[2] was a passenger.  After the accident, Seppala submitted an application for personal protection insurance (PIP) benefits to the Michigan Automobile Insurance Placement Facility, which assigned Farm Bureau to his claim.  Farm Bureau eventually paid PIP benefits to or on behalf of Seppala, then filed this action against Meadows to obtain reimbursement.  After finding out that Meadows was insured by Pioneer at the time of the accident, Farm Bureau filed an amended complaint seeking recoupment from Pioneer.

With its answer to Farm Bureau's complaint, Pioneer filed a cross-claim against Meadows seeking rescission of the policy on the basis of fraud.  As the basis for its claim, Pioneer alleged that Seppala was living with Meadows when she applied for insurance, and that Meadows misrepresented this fact when she submitted her application to Pioneer.  Meadows never filed an answer or otherwise defended this claim, and so a default judgment was entered against her.  The default judgment rescinded Pioneer's policy with Meadows, declaring it void *ab initio*.

As noted in footnote 1, the trial court consolidated this action with two other actions, adding VHS of Michigan, Inc. (VHS) and Seppala's Estate as parties.  After its policy with Meadows was rescinded, Pioneer moved for summary disposition against the remaining parties under MCR 2.116(C)(10).  Pioneer argued that the equities weighed in favor of declaring Meadows' policy with Pioneer void *ab initio* as to Seppala, which would in turn defeat the claims made by VHS and Farm Bureau.  The trial court denied Pioneer's motion for summary disposition and granted summary disposition in favor of Farm Bureau under MCR 2.116(I)(2).

## II.  SUMMARY DISPOSITION

Pioneer argues that the equities weigh in favor of rescinding the policy as to Seppala and those claiming through him, and therefore, the trial court erred by denying its motions for summary disposition.  We agree.

---

[1] On July 24, 2020, the trial court consolidated this matter with two other pending actions, LC Nos. 20-004366-NF and 20-003542-NF.  In those actions, VHS of Michigan, Inc. (VHS) filed claims against Farm Bureau and Pioneer, respectively, seeking reimbursement for services provided to Ronald Seppala (who is now deceased).  As a result of the consolidation, the Estate of Ronald Seppala and VHS were added as parties to this action.  Although VHS, on behalf of Seppala, was the plaintiff in those actions, VHS and Seppala's Estate are designated as third-party defendants in this appeal.

[2] As noted, Seppala is now deceased and his estate is a party.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

> When considering a motion brought pursuant to MCR 2.116(C)(10), the trial court must review the evidence in the light most favorable to the nonmoving party. Summary disposition is only appropriate when there is no genuine issue of material fact. A genuine issue of material fact exists when the record presents an issue upon which reasonable minds might differ. [*Id*. (citations omitted).]

The trial court denied Pioneer's motion under MCR 2.116(C)(10) and granted summary disposition to Farm Bureau under MCR 2.116(I)(2). That rule provides, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

Pioneer's motion sought rescission of a contract. As rescission is an equitable remedy, a trial court's decision whether to grant rescission is reviewed for an abuse of discretion. *Pioneer*, 331 Mich App at 405. Findings of fact in support of such a decision are generally reviewed for clear error. See *id*. However, because this issue was decided at the summary disposition stage, the trial court was not permitted to make any factual findings. See *Price v Kroger Co of Michigan*, 284 Mich App 496, 500; 773 NW2d 739 (2009) ("A court may not make findings of fact when deciding a summary disposition motion."). Instead, to grant summary disposition in favor of Farm Bureau on Pioneer's request for recession, the trial court needed to view the evidence in the light most favorable to Pioneer.[3] Conversely, to grant summary disposition in favor of Pioneer, the trial court needed to view the evidence in the light most favorable to Farm Bureau and the nonmoving parties. In light of our conclusion that Pioneer is entitled to summary judgment, we will view the evidence in the light most favorable to Farm Bureau, Seppala, and VHS.

## B. ANALYSIS

The parties do not dispute that Seppala was riding as a passenger in a vehicle operated by Meadows when he was injured, and that this vehicle was insured under a policy of no-fault insurance issued by Pioneer to Meadows. The trial court granted Pioneer a default judgment on its claim that it was entitled to rescind its policy with Meadows on the basis of Meadows' alleged fraud in her application for insurance. At issue in this case is whether Pioneer is also entitled to rescind the policy as to Seppala, an alleged innocent third party, and others claiming through him.

"[I]nsurers are not categorically entitled to rescission." *Pioneer*, 331 Mich App at 410 (quotation marks and citation omitted). Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id.* at 409 (quotation marks and citation omitted). When two innocent parties are affected, the trial court

---

[3] As we will discuss, the trial court failed to adhere to this standard throughout its opinion, and often resolved factual disputes in favor of Farm Bureau.

is required "to balance the equities to determine whether the equitable remedy of rescission [is] appropriate." *Id.* at 409. See also *Bazzi v Sentinel Ins Co*, 502 Mich 390, 410; 919 NW2d 20 (2018) ("When a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks.") (quotation marks and citation omitted). Here, there is no dispute that Pioneer was an innocent insurer, and Pioneer concedes that "Seppala is the innocent third party in this case."

"The ultimate issue in innocent-third-party cases, in particular those that concern both an innocent third party and an innocent insurer, pertains to which of these parties should bear the ultimate burden of the insured's fraud." *Farm Bureau Gen Ins Co of Michigan v ACE Am Ins Co*, 503 Mich 903, 903 (2018) (MARKMAN, J., concurring) (*Farm Bureau I*). In his concurrence in *Farm Bureau I*, Justice MARKMAN listed five "nonexclusive" factors that courts could consider in determining this "ultimate issue." *Id.* In *Pioneer*, this Court adopted those factors and condensed them into the following:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id.* at 411.]

This Court later cautioned, however, that these "factors are not to be merely counted up," but are instead to be weighed in an effort to determine "which innocent party should bear the" burden of the insured's fraud. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 108; 972 NW2d 325 (2021) (*Farm Bureau II*). See also *Farm Bureau I*, 503 Mich at 903. The party seeking rescission has the burden of establishing that rescission is warranted. *Id*.

The trial court concluded that the first factor—the extent to which Pioneer could have uncovered the misrepresentation before Seppala was injured—favored Seppala because Pioneer failed to establish that any fraud occurred in Meadows' application for insurance. This conclusion is legally incorrect. A default judgment was entered against Meadows declaring her policy with Pioneer void *ab initio* as to Meadows. The entry of the default judgment had the effect of admitting all well-pleaded allegations. *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 578; 321 NW2d 653 (1982) (explaining that "[i]t is an established principle of Michigan law that a default settles the question of liability as to well-pleaded allegations"). In its cross-claim, Pioneer alleged that Meadows committed fraud or misrepresentation by failing to identify other drivers or residents on her insurance application. The resulting default judgment thus established Meadows' fraud or

misrepresentation in her insurance application, and the trial court erred by finding that Pioneer failed to establish that any fraud occurred.[4]

To properly address the first factor, the trial court should have analyzed whether Pioneer could have uncovered Meadows' fraud before the accident. In *Pioneer*, 331 Mich App at 412, this Court reasoned that this factor was neutral because "[t]here is no evidence to suggest that there could or could not have been a more diligent effort on [the insurer's] part to discover contradictions or omissions in [the insured's] application any earlier." Here, the nonmoving parties did not present any evidence tending to suggest that Pioneer could have discovered Meadows' fraud sooner.[5] On the other hand, Pioneer did not present any evidence establishing that it could not have discovered Meadows' fraud sooner.[6] Thus, contrary to the trial court's conclusion that this factor weighed against Pioneer, this factor "does not truly weigh in either party's favor." *Id*.

For the second factor—whether Seppala had knowledge of the fraud—the trial court concluded that it favored Seppala because there was no evidence that he was aware of the policy, let alone any fraud. Viewing the evidence in the light most favorable to Farm Bureau and the nonmoving parties, we agree. When Seppala testified as part of a separate litigation, he said that he had only seen the 1999 Explorer one time before the accident, that he had never driven the vehicle, and that, while he was unsure if Meadows had insurance on the vehicle, he believed she did not. It can be reasonably inferred from this evidence that, if Seppala did not even know the 1999 Explorer was insured, then he would not have knowledge about any fraud Meadows committed when applying for the insurance. Thus, this factor weighs against rescission.[7]

---

[4] Even if the default judgment did not establish Meadows' fraud, it is not apparent that the trial court viewed the evidence in the light most favorable to Pioneer when it concluded that Pioneer failed to establish any fraud. Pioneer presented evidence that, when Meadows submitted her application, Seppala and Meadows had some type of ongoing relationship despite being divorced, and that Seppala was living at Meadows' residence. While the opposing parties presented evidence that Seppala was not living at Meadows' residence, the trial court did not explain why Pioneer's proffered evidence did not create a question of fact as to the issue of fraud.

[5] Meadows and Seppala were not married, so Meadows' failure to list Seppala on the application was not an obvious discrepancy that Pioneer should have been aware of. Compare *Farm Bureau II*, 337 Mich App at 102.

[6] As the party seeking rescission, Pioneer had the burden of establishing that this factor weighed in its favor. Instead of doing so, Pioneer argues only that no evidence suggests that Pioneer had any knowledge of Meadows' fraud. While this evidence tends to establish that this factor should not weigh against Pioneer, it is not sufficient to establish that it weighs in favor of Pioneer.

[7] We note that in *Farm Bureau II*, this Court explained that the second factor "looks to the relationship between the insured and the third party, suggesting that a close relationship allows for an inference that the third party knew of the fraud." *Farm Bureau II*, 337 Mich App at 105. In the trial court, Pioneer presented evidence suggesting that Seppala and Meadows had a close relationship, and argued that Seppala's knowledge of Meadows' fraud could be inferred from this

For the third factor—the nature of Seppala's conduct, whether reckless or negligent, in the injury-causing event—the trial court concluded that it weighed against rescission because Seppala was merely a passenger and could not have been negligent in causing the accident. Continuing to view the evidence in the light most favorable to Farm Bureau and the nonmoving parties, we agree. Simply no admissible evidence supported that Seppala was responsible for the accident.[8] Therefore, this factor weighs against rescission.

Turning to the fourth factor—the availability of an alternate avenue for recovery if the insurance policy is not enforced—the trial court concluded that it favored Pioneer "because Farm Bureau is the alternative source of recovery." This was the extent of the trial court's analysis of this factor. Analyzing this factor further, we conclude that it heavily favors rescission. In *Pioneer*, 331 Mich App at 413, this Court explained that "the fourth factor considers the present situation" of the parties. The "present situation" in this case is that Seppala has not only a theoretical alternate source of recovery, but he has *already recovered benefits* from that alternate source, and that alternate source will continue as his insurer for any remaining liability. Thus, this factor weighs heavily in favor of rescission.[9]

---

close relationship. In response, the nonmoving parties presented evidence that Seppala and Meadows did not, in fact, have a close relationship, and that Seppala did not otherwise have knowledge of Meadows' fraud. In granting summary disposition in favor of Farm Bureau, it is not apparent that the trial court considered evidence about the alleged relationship between Seppala and Meadows in the light most favorable to Pioneer, nor that the trial court considered whether Seppala's knowledge about Meadows' fraud could be inferred from the relationship as alleged by Pioneer.

[8] In the trial court, Pioneer attempted to admit hearsay statements that, according to Pioneer, established that Seppala was assaulting Meadows at the time of the accident and was thus the one ultimately responsible for the crash. The trial court refused to consider these statements, concluding that they were hearsay without an exception. Pioneer argues on appeal that this conclusion was error, but because we conclude that Pioneer is entitled to summary disposition even if those statements were inadmissible, we decline to address the issue.

[9] Farm Bureau argues that "this factor should not be weighed heavily against Farm Bureau, if at all," because the factor will "almost always weigh against the MACP or a MACP-assigned insurer in cases involving an assigned insurer." This argument is unconvincing for several reasons. First, the pertinent analysis weighs the equities between the innocent insured and the innocent third party, and Farm Bureau points to no authority to support its assertion that factor four should also consider whether rescission would be fair to the alternate source of recovery. Indeed, it would be odd to insert such a requirement for this factor given that Justice MARKMAN's concurrence, which is the source of all the factors, specifically listed the MACP as an alternate source of recovery to be considered under factor four, but did not say that the factor should consider the equity to the MACP. See *Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring). Second, even considering the fairness issue, the MACP or an MACP-assigned insurer would only be required to cover a claim that was properly made to the MACP, regardless of whether the properly-made claim

-6-

Finally, with respect to the fifth factor—a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party—the trial court concluded that it did not weigh in favor of either party because, while Seppala might have a third-party action against Meadows, Pioneer claimed that Seppala was a negligent party. On appeal, Pioneer contends that it was improper for the trial court to assume that Pioneer "would raise the issue of Seppala's contributory negligence in an action against Meadows . . . ." In response, Farm Bureau argues that the trial court properly considered this factor neutral. We decline to address whether the trial court properly weighed factor five as neutral because, regardless of whether the factor favors Pioneer or is neutral, our conclusion is the same.

Thus, to summarize, when viewing the five factors in the light most favorable to the nonmoving parties, two factors are neutral, two weigh against rescission, and one weighs heavily in favor of rescission. While it is true that more factors weigh against rescission than in favor of rescission, the "factors are not to be merely counted up," but are instead to be weighed in an effort to determine the ultimate issue of "which innocent party should bear the" burden of the insured's fraud. *Farm Bureau II*, 337 Mich App at 108. See also *Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring) (explaining that "[t]he ultimate issue in innocent-third-party cases" is which innocent party "should bear the ultimate burden of the insured's fraud"). As explained when discussing factor four, the "present situation" in this case, *Pioneer*, 331 Mich App at 413, is that Seppala has already recovered benefits from an alternate source, and that source will continue as Seppala's insurer for any remaining liability. It follows that, practically speaking, if the at-issue policy is rescinded, neither Pioneer nor Seppala would bear the burden of Meadows' fraud. On the other hand, if the contract is not rescinded, Pioneer would bear the burden for Meadows' fraud. Under this practical reality, the only reasonable outcome is rescission of the policy. Accord *Farm Bureau I*, 503 Mich at 903 (MARKMAN, J., concurring) ("Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud.").[10]

---

was the result of a rescinded policy. With that being the case, it is unclear what is unfair about the MACP or an MACP-assigned insurer covering a claim that was properly made to the MACP.

[10] We emphasize that this holding, like most holdings addressing equitable remedies, is unique to the facts of this case. It is not the law that whenever an alternate source has provided benefits to an innocent third party, the policy with the innocent insurer must be rescinded with respect to the third party. Rather, our holding is that, under the facts of *this* case, rescission is the only reasonable outcome. As explained by our Supreme Court, whether rescission is appropriate is handled case by case because "an absolute approach would unduly hamper and constrain the proper functioning of" an equitable remedy like rescission. *Bazzi*, 502 Mich at 411. See also *Tkachik v Mandeville*, 487 Mich 38, 46; 790 NW2d 260 (2010) ("Equity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case.") (Quotation marks, citation, and alterations omitted.)

III.  CONCLUSION

For the reasons explained in this opinion, the trial court erred by denying Pioneer's motion for summary disposition, and otherwise abused its discretion by refusing to grant Pioneer's request for the equitable relief of recession.[11]

Reversed and remanded for the trial court to enter an order granting Pioneer's motion for summary disposition.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien
/s/ Michelle M. Rick

---

[11] Pioneer raises several other arguments on appeal that we decline to address, including (1) whether the trial court erred by not considering how Pioneer was prejudiced by the delay between when the accident occurred and when Pioneer was informed of the accident (2) whether the trial court properly excluded certain evidence submitted by Pioneer because it constituted hearsay without an applicable exception, and (3) whether the trial court properly denied Pioneer's motion for a qualified protective order to view Meadows' medical records from after the May 2017 crash.